CASE No. 926.

SIMPSON v. WILLARD.

1. The constitution of this state, (*Art. IV.,* § 2,) provides that a chief justice and two associate justices shall be elected for the term of six years, to be so classified that one of the justices shall go out of office every two years. *Held*, that a chief justice elected to supply a vacancy caused by the death of his predecessor was entitled to hold the office only for the remainder of the term of such predecessor, and not for the full term of six years.
2. Weight given to contemporary construction.
3. This case distinguished from *Wright* v. *Charles*, 4 *S. C.* 178; *Whipper* v. *Reed*, 9 *S. C.* 5.

Original application, Special Term, September, 1880.

In this case, Hon. Henry McIver, senior associate justice presided, and Hon. Joshua H. Hudson, judge of the Fourth Circuit, sat, by appointment of the governor, as one of the court, the chief justice, as a party to the cause, being disqualified.

The case is fully stated in the opinion.

*Messrs. L. F. Youmans,* Attorney-General; *W. G. DeSaussure* and *J. S. Cothran,* for plaintiff.

*Mr. F. W. McMaster,* contra.

October 15th, 1880. The opinion of the court was delivered by

HUDSON, A., A. J. By agreement between the parties, plaintiff and defendant aforesaid, a controversy without action, under Section 389 of the code of procedure, is submitted to this court, wherein is presented for determination the question whether the plaintiff has been duly elected and qualified, and is entitled to have and to hold the office of chief justice of the Supreme Court of the State of South Carolina, claimed and held by the defendant.

The controversy arises on the following facts, viz.: The Hon. F. J. Moses, Sr., was elected to the said office by a joint vote of the general assembly on July 29th, A. D. 1868. The Hon. F. J. Moses, Sr., was re-elected to the said office on January 30th, A. D. 1874, by a joint vote of the general assembly, to hold for the term of six years, commencing from the expiration of the then existing term of said office, and duly qualified and entered upon the said last mentioned term of said office, and held the same until his death, which occurred on March 6th, A. D. 1877.

That on May 15th, A. D. 1877, the general assembly, (in conformity to a concurrent resolution of the two houses, of date of May 11th, A. D. 1877,) proceeded to elect a chief justice by joint vote thereof, and the said defendant, A. J. Willard, was, by said joint vote, elected chief justice of the Supreme Court to fill the vacancy created by the death of the Hon. F. J. Moses, Sr.

That the defendant duly qualified and entered upon the duties of the said office on May 15th, A. D. 1877, and has continued to hold said office, and claims to hold the same until the full end and expiration of the term of six years, from and after the day on which he was so elected to said office.

That on December 17th, A. D. 1879, the two houses of the general assembly passed a concurrent resolution, under which the general assembly, on December 18th, 1879, proceeded to elect a chief justice; and the said plaintiff, W. D. Simpson, was, by joint vote, elected thereto, and qualified and was commissioned chief justice on September 6th, A. D. 1880.

The said W. D. Simpson claims that the election of A. J. Willard on May 15th, 1877, entitled the said Willard to hold the office for the unexpired term of F. J. Moses, Sr., only; that this has now expired; and that, therefore, he, W. D. Simpson, is entitled to the possession of said office.

The question submitted is, whether a vacancy in said office has occurred by reason of the expiration of the term of the office of chief justice, to which the said defendant, A. J. Willard, was elected on May 15th, A. D. 1877. If the court shall be of opinion that the office of the defendant, A. J. Willard, has expired by due course of law, judgment must be entered in favor of the plaintiff, W. D. Simpson, that he is entitled to have and to hold the office of chief justice of the Supreme Court; but if the court shall be of opinion that the defendant's term of office has not expired, judgment must be in favor of the defendant, that he is entitled to have and to. hold the office of chief justice as against plaintiff.

The foregoing is almost literally the language of the controversy submitted to this court, and which we have thought best to set forth fully.

Its solution depends entirely upon a proper construction of the following sections of Article IV. of the constitution of the State of South Carolina, as ratified by the people on April 16th, A. D. 1868.

These sections are in Article IV., relating to the judicial department:

"SECTION 2. The Supreme Court shall consist of a chief

N

justice and two associate justices, two of whom shall constitute a quorum. They shall be elected by a joint vote of the general assembly for the term of six years, and shall continue in office until their successors shall be elected and qualified. They shall be so classified that one of the justices shall go out of office every two years.

"SECTION 3. The chief justice elected under this constitution shall continue in office for six years, and the general assembly, immediately after the said election, shall determine which of the two associate justices shall serve for the term of two years, and which for the term of four years; and, having so determined the same, it shall be the duty of the governor to commission them accordingly.

"SECTION 11. All vacancies in the Supreme Court or other inferior tribunals, shall be filled by election as herein prescribed; *provided*, that if the unexpired term does not exceed one year, such vacancy may be filled by executive appointment."

In searching for the true interpretation of these sections of our constitution, and upon which the present controversy depends for determination, we naturally inquire in the outset whether they have at any time received either legislative or judicial construction—and, if so, such construction should receive due consideration by this court in its bearing upon the question now submitted for the first time to this court for adjudication. It is a rule of common sense, recognized and adopted by judges' and text writers as a rule of law, that in doubtful questions of construction, arising under statutes and constitutions, due weight should be given to cotemporaneous exposition and usage. Due regard should be had to the opinions entertained by men learned in the law and by the law-makers who are called upon to carry into effect the constitution. The manner in which such men have uniformly interpreted the constitution, and the mode in which they have invariably carried its provisions into effect, will be of little weight with a court when called upon to pronounce a judicial exposition of the language of a constitution in which no ambiguity appears and no room for doubt exists, but will be of material aid to the court, and carry great force in cases where ambiguity does exist and doubt does arise from the phraseology

of the instrument. *Contemporanea expositio est fortissima in lege*, is a maxim of the civil law. And whilst the rule governing judicial tribunals is that cotemporaneous construction is not absolutely binding upon them in giving judicial interpretation to a statute or constitution, yet it has, in cases of ambiguity, always been accorded full weight, and, indeed, in many cases, has been allowed to prevail in fixing judicial interpretation. In considering the constitutional authority of the justices of the Supreme Court of the United States to sit as justices of the Circuit Courts, Patterson, J., pronouncing the opinion of the Supreme Court of the United States, said : " Another reason for reversal is, that the judges of the Supreme Court have no right to sit as Circuit judges, not being appointed as such, or, in other words, that they ought to have distinct commissions as such. To this objection, which is of recent date, it is sufficient to observe that practice and acquiescence under it for a period of several years, commencing with the organization of the judicial system, affords an irresistible answer, and has, indeed, fixed the construction. It is a contemporary interpretation of the most forcible nature. This practical exposition is too strong and obstinate to be shaken or controlled. Of course the question is at rest, and ought not now to be disturbed." *Stuart* v. *Laird*, 1 *Cranch* 309. This decision was as early as February, 1803, when the constitution of the United States had been in operation about as long as has been that of South Carolina of April, A. D. 1868.

To the same effect is the language of Story, J., in *Martin* v. *Hunter*, 1 *Wheat.* 351, touching the appellate jurisdiction of the Supreme Court of the United States in cases from state courts. After enumerating many of the historical facts connected with the question, and establishing uniform acquiescence in the jurisdiction then for the first time questioned, that eminent judge says : " This weight of contemporaneous exposition by all parties, this acquiescence of enlightened state courts, and these judicial decisions of the Supreme Court through so long a period, do, we think, place the doctrine upon a foundation of authority which cannot be shaken without delivering over the subject to perpetual and irremediable doubt."

In *Sedg. on Stat. & Const. L.* 251, the learned author, speak-

ing of contemporaneous exposition, says: "In seeking aid to construe an obscure or doubtful statute, considerable weight is attached to the opinions in regard to it by persons learned in the law at the time of its passage." "Great regard," says Lord Coke, "ought, in construing a statute, to be paid to the construction which the sages of the law who lived about the time or soon after it was made, put upon it, because they were best able to judge of the intention of the makers at the time when the law was made."

In perfect harmony with this doctrine are the views expressed by Blackstone, Vattel, Story, and all standard writers on constitutional and statute law, from whose able works it is entirely unnecessary to encumber this opinion with further extracts.

Applying this well-established rule of cotemporary exposition to the case in hand, we find that the three foregoing sections of the constitution fixing the tenure of office of the justices of the Supreme Court, and prescribing the mode of filling all vacancies that may occur therein, have received perfect uniformity of construction by every legislature of the state, from A. D. 1868 until the present day. In every instance where a vacancy has occurred in the office of chief justice or associate justice of the Supreme Court, by the death or resignation of the incumbent before the expiration of the full term, the election to fill such vacancy has been for the unexpired term only, and the justice so elected and so commissioned has, without exception, save in the present instance, acquiesced in this construction, and suffered an election to be held for a successor to the next regular full term.

On the resignation of Justice Hoge, February 1st, 1870, Justice Wright was elected and commissioned to fill his unexpired term, ending July 30th, 1870, and on December 9th, 1870, Justice Wright was elected to the full succeeding term, ending July 30th, 1876, and on December 15th, 1875, was again elected to fill the succeeding full term, beginning July 31st, 1876, and ending July 30th, 1882. On December 5th, 1877, Wright having resigned, A. C. Haskell was elected justice to fill the unexpired term of Wright. On December 11th, 1879, Haskell having resigned the associate justiceship, Samuel McGowan was elected to fill the unexpired term of said Haskell, to wit, the

unexpired term of Wright, the first incumbent of the full term, from July 30th, 1876, to July 30th, 1882.

On May 15th, 1877, Willard, then associate justice, was elected chief justice to fill the vacancy occasioned by the death of Chief Justice Moses.

On May 18th, 1877, Henry McIver was elected associate justice to fill the vacancy created by the promotion of Willard to the chief justiceship, and whose regular term of office as associate justice would have expired July 30th, 1878.   And hence, on December 4th, 1877, Henry McIver was elected associate justice to fill the succeeding regular full term to commence July 31st, 1878, and ending July 30th, 1884.   Finally on December 18th, 1879, the legislature elected W. D. Simpson chief justice to fill the full term succeeding the unexpired term of Moses, then held by Willard, and which expired July 30th, 1880.

The journals of the general assembly show that on two occasions at least the true construction of the three foregoing sections of the constitution became the subject of examination and discussion ; once pending the election of a successor to Chief Justice Moses, and again pending the election of a successor to Chief Justice Willard.   On both occasions the general assembly, by their action, construed Section 2, requiring that *one of the justices shall go out of office every two years,* as imperatively fixing a rotation which that body could not alter, and that the election to an unexpired term, provided for in Section 11, could, in no event, enlarge the term of the justice so elected so as to extend it beyond the fixed, definite and unchangeable termination of the then current and unexpired term.

This brief narrative demonstrates the fact that the general assembly of the state—the first and each succeeding legislative body for twelve years—have uniformly construed the constitution to mean that the election of a justice of the Supreme Court to fill an unexpired term gives no right to the justice elect to hold beyond said unexpired term.   And the narrative likewise reveals the fact that the claim of the present defendant is without precedent in the history of the Supreme Court since its establishment in 1868.

In the examination of the question before us, we are further

aided by the contemporaneous and uniform exposition of another section of the constitution, wherein a like system of classification and rotation is prescribed for a portion of the legislative department of the government.

"Article II., Sec. 9. Upon the meeting of the first general assembly which shall be chosen under the provisions of this constitution, the senators shall be divided by lot into two classes, as nearly equal as may be, the seats of the senators of the first class to be vacated at the expiration of two years after the Monday following the general election, and of those of the second class at the expiration of four years, so that, except as above provided, one-half of the senators may be chosen every second year."

The preceding section (8), provides for the election of one senator from each county, except Charleston, which has two, and fixes the term of office of a senator at four years.

Pursuant to Section 9, upon the meeting of the first general assembly the classification of senators was made by lot, and a rotation fixed, which rotation has ever been kept unbroken, and can alone be kept unbroken by maintaining, in the case of each senator from each county, a term of office definite as to its beginning and ending, and, should a vacancy occur by death or resignation during any current term, by filling the same for the remaining portion of such unexpired term, and for that period of time only. This rule in filling vacancies of terms has been rigidly followed as the only mode of preserving the mandate of the organic law, which requires that one-half of the senators may be chosen every second year. Since the adoption of the state constitution in 1790, this scheme of rotation and classification has been retained in every succeeding constitution; and, under its operation, it has been an invariable rule that if the people elect a senator to fill a vacancy in an unexpired term he retains his seat until the current term expires, and no longer, unless by virtue of a re-election to a full succeeding term. Yet, under the constitution, the term of office of a senator is *four years,* just as that of a justice of the Supreme Court is *six years.*

But, nowhere can we find a more forcible illustration of the controlling effect of this revolving scale of rotation over elections to fill vacancies than in the organization and uniform usage and

practice of the United States senate.   Indeed, the organization of our Supreme Court seems to have been modeled upon that of the federal senate.

The provisions of the constitution of the United States in this regard are in Article I., Section 3, which reads as follows: "The senate of the United States shall be composed of two senators from each state, chosen by the legislature thereof for six years; and each senator shall have one vote.

"Immediately after they shall be assembled, in consequence of the first election, they shall be divided as equally as may be into three classes.   The seats of the senators of the first class shall be vacated at the expiration of the second year, of the second class at the expiration of the fourth year, and of the third class at the expiration of the sixth year, so that one-third may be chosen every second year; and if vacancies happen, by resignation or otherwise, during the recess of the legislature of any state, the executive thereof may make temporary appointments until the next meeting of the legislature, which shall then fill such vacancies."

This section bears a striking resemblance to Sections 2 and 3 of Article IV. of our state constitution, so much so that we are unhesitatingly led to believe that the framers of our state constitution intended to organize a Supreme Court upon the model of the senate of the United States as to classification of its component parts and their periodical rotation, and, also, as to the mode of perpetuating the scheme by providing elections to fill vacancies in unexpired terms.   Of this section of the federal constitution, from the first organization of the senate thereunder down to the present time, there has been but one exposition and interpretation, in the senate and out of the senate, by state executives and state legislatures, by text writers, commentators, jurists and judges.   That construction is that the original division of senators into three classes, to enter and to depart at stated periods in regular rotation, is a fundamental feature of the organic law, intended to be a continuing and perpetual feature of the senate so long as that august body lasts; and that this succession of entry and departure by the classes of senators cannot be interfered with nor deranged by any action, either executive or legis-

lative, state or federal. Hence, in every instance, under the constitution, of an election of a senator to fill a vacancy created by the death, resignation or removal of an incumbent before the expiration of his term, the senator elect has only held until the expiration of the unexpired term which he was chosen to fill, and no longer. It is needless to say that by no other construction could the original, leading, fundamental scheme of rotation of classes be maintained. And that this scheme should be maintained and perpetuated was evidently the leading design and main object of the framers of the constitution; and, being so, all minor provisions must be construed to be subordinate and subservient thereto. The supplying of vacancies in unexpired terms is incidental to the preservation of an existing term of office, and hence must be so conducted and carried out as not to derange, but to preserve this fundamental and leading design of succession and regular rotation. As state after state has been admitted into the Union, two senators from each have been chosen by the legislature, invariably for the term of six years, but, immediately upon entering that body, they have each, by lot, been cast into one class or another of the three divisions of senators, and their respective terms of office have been made to conform to that of the class to which lot had assigned them.

Of the policy, the merits and wisdom of this scheme, which imperatively required that one-third of the senators shall go out of office every two years, it is not for us here to speak. It is enough to say that it was incorporated into the organic law by wise men for wise purposes, with safeguards of perpetuation thrown around it; that it has been most rigidly and scrupulously maintained in its original integrity, and its wisdom has been fully vindicated by the experience of nearly a century.

All that we design to show is the fact that this section of the constitution of the United States, so analogous in its phraseology and provisions to that of the section of our constitution now under discussion, has never received by any legislative body, state or national, nor by any learned commentator on constitutional law but one exposition, and that is that the terms of office of the three classes of senators must follow each other in duration and ending in regular order of rotation and periodical suc-

cession, and can never, by election to fill unexpired terms and casual vacancies, be so deranged as to destroy this sliding scale.

Perhaps it may be said that this uniform exposition of the section by legislators, politicians and commentators is not the technical interpretation which the language calls for, and which a judicial mind must give it, but rests alone upon political views and ideas of symmetry and convenience.

To this it is a sufficient reply to say that the senate has ever been composed in part of the ablest jurists of the country; the judicial ermine has never been worn by purer and abler judges than Marshall, Story and Kent, and, as commentators upon law, the two latter are unrivalled in this country. They are all agreed in the exposition of this section of the constitution, and none have been found to differ. And the absence of a judicial exposition of the law arises from this unanimity of construction and its removal from the jurisdiction of the judicial department. But whenever, in the judicial determination of a germain question, it has been appropriate, in illustration, to advert to the law organizing the senate of the United States and of the states, judges have uniformly interpreted the constitution in this regard the same way as have statesmen and commentators.

In *People* v. *Green,* 2 *Wend.* 273, a leading New York case, involving the construction of the constitution of New York relative to the office of sheriff, the court says: "The case of sheriffs has been assimilated to that of senators, who are declared by the constitution to be chosen for four years; but those chosen to fill vacancies hold only for the residue of the unexpired term of their predecessors. This limitation to their holding does not result from the fact that they are chosen to fill vacancies, but from other parts of the constitution from which it is necessarily implied. The provision classifying the senators, and vacating the seat of one from each district in every year, could not be carried into effect if a senator elected to fill a vacancy were to hold a full term of four years. But permitting a sheriff to hold for three years in case he is elected to fill a vacancy, is not like the case of a senator, incompatible with any other part of the constitution."

Pursuing this research, we are brought in chronological order

to the case of *Whipper* v. *Reed*, 9 *S. C.* 5. The issue, in that case was as to the term of office of a Circuit judge elected to fill an unexpired term, and it was there held by this court that a Circuit judge elected by the legislature under Article IV., Section 11, of the constitution of the state to fill a vacancy in the office, holds, under Section 13 of the same article, for the full term of four years, and not merely for the unexpired term of the judge in whose place he was elected.

It is worthy of mention that this judgment was rendered by two of the justices then alone sitting, viz., by Chief Justice Willard, the present defendant, and Associate Justice McIver, both of whom had been but recently elected to this office, and both to fill vacancies created casually. Chief Justice Willard had been elected to fill the vacancy created by the death of Chief Justice Moses, and Justice McIver had been elected to fill the vacancy created by the promotion of Willard. The judgment was rendered in June, A. D. 1877, within a month after the agitation in the legislature of the very question now before us, pending the election of Willard, chief justice.

The public mind was more or less exercised upon the question, and naturally desired a judicial exposition thereof that might put it at rest. The occasion and all the surrounding circumstances must have been, and certainly were, highly appreciated and fully understood by the learned court, both of whom, holding terms casually made vacant, were interested in this question. It is reasonable to presume, under all these circumstances, that the duration of their own terms of office would not have been made the subject of an unnecessary and idle *obiter dictum;* and we may reasonably infer, on the other hand, that all that was incorporated in that opinion bearing upon the tenure of office of the justices of the Supreme Court, was the result of calm deliberation and sober thought. In the learned opinion of Chief Justice Willard in this well-considered case, he proceeds to show that the law applicable to filling vacancies in the office of a Circuit judge is different from the constitutional mode prescribed for filling vacancies in the Supreme Court, so far as the *effect* and *consequence* of the election is concerned. In the one case the effect of an election to fill a casual vacancy is to confer upon the

officer elected a full term of four years under the controlling words of Section 13 of Article IV., whilst in the case of a vacancy in the Supreme Court the effect of an election to fill the same is to confer upon the justice so elected the vacant or unexpired term only, by reason of the controlling language of Sections 2 and 3. In the course of his remarks he says: " When the constitution fixes the duration of a term of office, and at the same time provides for its being filled at a fixed time, occurring periodically, it necessarily follows that, a casual vacancy occurring during such term of office, necessity must arise for filling it for the unexpired term; and although the mode of filling such vacancy is prescribed by the constitution, yet the incumbent only holds until the time arises for filling the office in the regular mode and at the regular time prescribed by the constitution. In that case the officer taking a term of office less than that prescribed for the office, is placed in that position by the effect of the constitution itself, reached by treating one class of provisions as necessarily a limitation of the other.   *   *   *   Having these principles in view, let us look into the constitution to see whether there is anything to sustain the conclusion that the constitution has imposed a limit to the duration of the office of Circuit judge of such a nature that persons elected to fill a casual vacancy cannot claim the full term attached to the office, but can hold only for the unexpired term.

" In the first place there is no such provision indirectly accomplishing such a result by fixing the time when the Circuit judges shall take their offices. Such a provision exists, as we have already noted, in the case of the officers described as ' state officers.' *Art. IV.*, § 2; *Art. XIV.*, § 10. Such a limitation is inferrable as affecting the justices of the Supreme Court from the provision requiring that one of these justices shall be elected every two years, but none is found affecting the Circuit judges. This omission is evidently not accidental, but intentional. In the case of the Supreme Court, that body being composed of three justices, there was reason for placing regular intervals of two years between the elections of the respective justices, so that no sudden change should be made in the organization of the court, an important safeguard against inequality in the adminis-

tration of the law. As the Circuit Court is held in every case by a single judge, that reasoning does not call for a similar provision as it regards the Circuit judges."

It will be observed that in quoting the last clause of Section 2 of Article IV. of the constitution of 1868, the learned chief justice inadvertently remarks that it provides that "one of these justices shall be elected every two years," whilst he should have said that "one of the justices shall go out of office every two years."

In his learned argument for the present defendant, counsel alleges that the foregoing *obiter dictum* in Whipper *v.* Reed derives its strength from this erroneous quotation; but we are unable to perceive how the force of the reasoning would be in the least impaired by using the exact words of the section instead of the phraseology used by Chief Justice Willard above. They interchangeably mean the same thing.

We have been led to extract copiously from this opinion, because, although technically an *obiter dictum,* yet the argument is cogent and sound, and, viewed in the light of surrounding circumstances, must be regarded as an authoritative judicial interpretation of the constitution, carrying with it great weight in the list of cotemporaneous expositions thereof.

Passing from the argument resting upon usage, acquiescence and cotemporary exposition, we find that we are not without authoritative precedent bearing directly and with great force upon the case before us. We refer to the case of *The People, ex rel. Jackson,* v. *Potter,* 47 N. Y. 376.

The facts were, that Rosekrans, at the adoption in 1869 of the judiciary amendment to the constitution, was a justice of the Supreme Court, Fourth District. His term would expire December 31st, 1871. On November 6th, 1871, he resigned. On November 7th, 1871, a general election in his district was held, and Potter was elected to succeed him. Potter was elected for a term of fourteen years. When Rosekrans resigned the governor appointed Jackson, under Section 9, to fill the vacancy. Jackson claimed to hold until December 31st, 1872. The court held that Jackson's term lasted only for Rosekrans' term, and expired December 31st, 1871.

The Court of Appeals sustained this view, and Folger, J., said: "Mr. Justice Rosekrans could not resign that which he did not hold. He did not hold, nor was he entitled to hold the term beginning January 1st, A. D. 1872, nor any part thereof. He could not then resign that term nor any part of it. Hence the resignation which he made could create no vacancy in the office for that term to be filled, nor for any part thereof. The vacancy which he did create was for the remainder of his unexpired term, and for no other time. This was the vacancy to be filled, and no other.   *   *   *   To sum up our views, we conceive that the whole article must be read together; that each must be made to act in unison with each other; that, where there is conflict, that which provides for a contingency must be held to be subservient to those which provide for the general purpose, and for events sure to occur at stated intervals."

Under the constitution of New York, under which this judgment was rendered, the system of classification and rotation prevailed in both the Supreme Court and Court of Appeals, somewhat similar to our Supreme Court, and hence the value of this decision to us in solving the present question.

Thus far we have considered the question presented to us in the light of contemporaneous exposition and judicial precedent, and the result of the investigation establishes the fact that the harmony and uniformity of interpretation remains unbroken, and that this well-established interpretation is the same as the full, clear, explicit and forcible exposition of this branch of the organic law, rendered by the learned defendant himself in the aforesaid well-considered case of Whipper *v.* Reed.

It only remains, in conclusion, to examine the sections of the constitution out of which this contention springs, and to ascertain whether this usage, acquiescence and exposition can be reconciled to the true intent and meaning of the framers of the constitution to be gathered from that instrument by established rules of judicial interpretation.

These rules are, in the main, plain, simple, and of easy comprehension. They are rules of common sense, derived from experience, and formulated into rules and maxims of law. All have a common purpose in view, and that is to ascertain the

real meaning, intention and main object of the law-makers in framing statutes and constitutions.

Story says: " Every word employed in the constitution is to be expounded in its plain, obvious and common sense meaning, unless the context furnishes some ground to control, qualify and enlarge it. Constitutions are not designed for metaphysical or logical subtleties, for niceties of expression, for critical propriety, for elaborate shades of meaning, or for the exercise of philosophical acuteness or judicial research. They are instruments of a practical nature, founded on the common business of life, adapted to common wants, designed for common use, and fitted for common understandings. The people make, the people adopt them, the people must be supposed to read them with the help of common sense, and cannot be presumed to admit in them recondite meanings, or any extraordinary gloss." *Story on Const.*, § 451.

Let us apply this rule of common sense to the interpretation of the section of our constitution under consideration.

Section 2 of Article IV. provides for the organization of a Supreme Court, and requires that it shall consist of a chief justice and two associate justices. The term of office of each shall be six years. They shall be elected by a joint vote of the general assembly, and "*they shall be so classified that one of the justices shall go out of office every two years.*" Not one of the associate justices, but one of the *justices*, which term of expression includes all three; the chief as well as each of the associate justices, shall go out every two years. There is no ambiguity, no room for doubt, no need of construction of the language of this section. The meaning of the section is plain and manifest. It prescribes the number of justices, the mode of election, the term of office, its duration, the classification of the justices, and a system of rotation by which one of the three members of the court shall go out of office every two years. This biennial succession is thus imperatively made a feature of the court, continuing and to continue so long as the court shall last; it is a leading feature of organization, unchanging, invariable, definite and fixed, and, once put in operation, continues by virtue of its own inherent energy. Having thus, in Section 2, provided for the

court all the necessary elements and component parts of a symmetrical whole, Section 3, following, is designed solely to perfect the classification, and to put this judicial machinery into operation. It provides that in this classification the officer of greatest dignity shall take the first rank, viz., the full term of six years, and very properly leaves it to the legislature to say which of the associate justices shall rank second and which third, which for the term of four years, and which for the term of two years.

So soon as this duty of electing and classifying the justices was perfected by the first legislature the court was organized, and these provisions of the organic law furni-hed the scheme of its permanency with biennial succession of its classes. No other provision as to the court would have been necessary but for contingencies arising from uncertainty of human life and other casualties incident to office. It became necessary, therefore, to provide for the filling of casual vacancies created by death, resignation or removal from office of the incumbent, as well as the filling of vacancies of full terms. To meet this end, Section 11 provides that "all vacancies in the Supreme Court, or other inferior tribunals, shall be filled by election as herein prescribed; *provided*, that if the unexpired term does not exceed one year such vacancy may be filled by executive appointment."

Now the only mode of electing a justice of the Supreme Court, "herein prescribed," is by joint vote of the general assembly, and to this mode of election, and to nothing else, are the words "as herein prescribed" to be referred when applied to justices of the Supreme Court. So that, in this section, full and ample provision is made to fill *all* vacancies in the Supreme Court, whether the vacancy be that of a full term or part of a term. This power to fill *all* vacancies is conferred upon the legislature, which body can, by joint vote of the two houses, fill the vacancy of a full term, or of any part of an unexpired term, whether the same be more or less than a year. But as that body meets but once annually, and as a vacancy may happen during the recess of the general assembly, power is conferred upon the executive to fill, by appointment, a casual vacancy that does not exceed a year in duration.

It is difficult to see how more perfect provision could be devised for keeping the Supreme Court full and operative.

Construing this eleventh section in connection with Sections 2 and 3, it is manifest that when the vacancy in the Supreme Court is that of the unexpired term of any one of the justices, whether chief or associate, and the same is filled either by the joint vote of the general assembly or by executive appointment, the term of office of the justice so elected or appointed, must end with the expiration of the term which he was chosen to fill. Otherwise there would necessarily occur a derangement of the scheme imperatively established and unalterably fixed in Section 2, viz.: "That one of the justices shall go out of office every two years." To the operation of this controlling mandate all elections are subordinated, so that it matters not when or how the justice is inducted into office, whether by virtue of an election or by appointment, he must go out when the fixed and definite period of the term upon which he enters expires.

"When the constitution fixes the duration of a term of office, and at the same time provides for its being filled at a fixed time, occurring periodically, it necessarily follows that, a casual vacancy occurring during such term of office, necessity must arise for filling it for the unexpired term; and although the mode of filling such vacancy is prescribed by the constitution, yet the incumbent only holds until the time arrives for filling the office in the regular mode and at the regular time prescribed by the constitution." Chief Justice Willard in *Whipper* v. *Reed, supra.*

But in *Wright* v. *Charles,* 4 *S. C.* 178, it has been held by this court that when one is elected to fill a casual vacancy in the office of clerk of the Court of Common Pleas, he holds, not for the unexpired term, but for a full term of four years. And so, likewise, in *Whipper* v. *Reed,* it is decided that when one is elected to fill a casual vacancy in the office of Circuit judge, he holds for the full term of four years, and not merely for the unexpired term. In behalf of the present defendant it is urged that the same rule applies to elections to fill vacancies in the office of chief justice, and that the construction of the constitution, as contended for by the present plaintiff, if adopted by this court, will overthrow the doctrine of Wright v. Charles and

Whipper v. Reed. But in this view we cannot concur. For, in the case of a clerk of the court, there is nothing whatever in the constitution to limit the effect of the imperative words contained in Section 27, Article IV., "who shall hold his office for the term of four years," and, therefore, as was properly held in Wright v. Charles, a clerk, whenever duly elected, is entitled to hold the office for the full constitutional term of four years; and in the case of a Circuit judge, the provision of Section 11, Article IV., as to filling a vacancy in his office, must be controlled by the imperative mandate of Section 13 of Article IV., "who shall hold his office for a term of four years." Therefore, as was properly held in Whipper v. Reed, a Circuit judge, whenever duly elected, is entitled to hold his office for the full constitutional term of four years.

But in the case of a casual vacancy in the office of justice of the Supreme Court, whether chief or associate, the rule is different, because the provision fixing their term of office at six years, must, necessarily, be qualified by that other provision in the same section which requires that they shall be so classified as that one of them *must go out of office every two years;* otherwise this latter provision would be entirely defeated. Hence, in filling a casual vacancy in the office of justice of the Supreme Court, it must be so done as not to disturb this essential feature of classification stamped upon that tribunal by the constitution. Manifestly this can only be effectually preserved by filling casual vacancies for the unexpired term only. The reason for this distinction is obvious. The constitution makes no classification of clerks or Circuit judges. Each clerk and Circuit judge, in the discharge of the functions of his office, acts singly and alone, whilst the three justices of the Supreme Court constitute but one body, and act together in the discharge of the functions of that tribunal, and hence the requirement that they shall be so classified as that one of the justices shall go out of office every two years, is fundamental and imperative, and necessarily must control all other provisions as to tenure of office which might seem to be at variance with it. This classification fixes the end as well as the beginning of the term of office in this Appellate

O

Court, and hence limits and controls all other provisions regarding elections to fill casual vacancies.

The harmony between this construction of the constitution and the doctrine of Wright *v.* Charles and Whipper *v.* Reed, is clearly and forcibly demonstrated by Chief Justice Willard in the opinion he delivered in the latter case by a line of argument clear, logical and unanswerable, extracts from which we have already cited, and the substance of which we deem it unnecessary to reproduce in varied phraseology.

It follows, therefore, that when, on May 15th, A. D. 1877, the Hon. A. J. Willard, the present defendant, was elected chief justice to fill the vacancy occasioned by the death of the Hon. F. J. Moses, Sr., on March 6th, 1877, whose term expired July 30th, 1880, he was elected to fill such unexpired term only. That said term having expired on July 30th, A. D. 1880, the lawful term of office of the defendant as chief justice of the Supreme Court of South Carolina, ended on July 30th, A. D. 1880.

That when, on December 18th, A. D. 1879, the Hon. W. D. Simpson, plaintiff herein, was elected to the office of chief justice by joint vote of the general assembly, he was elected to fill the full term of six years, beginning July 31st, 1880, and ending July 30th, 1886.

That he is, therefore, entitled to have and to hold the said office of chief justice of the Supreme Court of South Carolina against the said defendant, and for the full constitutional term aforesaid, and it is accordingly so adjudged.

McIVER and McGOWAN, A. J.'s, concurred.