## STATE EX REL. HENNEPIN COUNTY BAR ASSOCIATION AND ANOTHER v. THE HONORABLE DOUGLAS K. AMDAHL AND THE HONORABLE DONALD T. BARBEAU.

119 N. W. (2d) 169.

December 28, 1962—No. 38,934.

*Neville, Johnson & Thompson, Richard W. Johnson,* and *Paul Klaverkamp,* for respondent Amdahl.

*Benedict Deinard, Carl K. Lifson,* and *Robert Kelber,* for respondent Barbeau.

KNUTSON, CHIEF JUSTICE.

Harold N. Rogers was elected Judge of the District Court of the Fourth Judicial District at the general election in 1956. His term of office normally would expire on the first Monday of January 1963. He filed for reelection in the 1962 primary election and was nominated without opposition. One week before the 1962 general election was to be held, on October 31, 1962, Judge Rogers died. On November 2, the governor appointed Douglas K. Amdahl to fill the vacancy created by the death of Judge Rogers. Purporting to act under Minn. St. 202.14, Donald T. Barbeau filed by petition for the office held by Judge Rog-

ers' for the term commencing on the first Monday of January 1963. No one else filed for the office. It is conceded that Amdahl's appointment is effective until the first Monday of January 1963. This is a proceeding in quo warranto to determine who shall be entitled to hold the office on and after January 7, 1963.

Prior to 1956, Minn. Const. art. 6, § 10, read:

"In case the office of any judge become vacant before the expiration of the regular term for which he was elected, the vacancy shall be filled by appointment by the governor, until a successor is elected and qualified. And *such successor shall be elected at the first annual election that occurs more than thirty days after the vacancy shall have happened.*" (Italics supplied.)

An amendment to article 6 of our constitution was adopted by the people on November 6, 1956. Article 6, § 11, of the amendment reads:

"Whenever there is a vacancy in the office of judge the governor shall appoint in the manner provided by law a qualified person to fill the vacancy, to hold office until his successor is elected and qualified. *The successor shall be elected for a six year term at the next general election occurring more than one year after such appointment.*" (Italics supplied.)

Inasmuch as both claimants to the office appear here as respondents, we will refer to them by their surnames to avoid confusion.

Respondent Barbeau first contends that the language of art. 6, § 11, is not self-executing and that no vacancy in a judicial office can be filled by appointment until this constitutional provision is implemented by an act of the legislature. Ordinarily, language such as we have here might be so construed. However, the office of judge is of such vital importance that we cannot believe that the people of the state ever intended that a vacancy in such office should remain unfilled simply because the legislature has failed to act. Since the adoption of this constitutional amendment, three sessions of the legislature have been held. Numerous judicial appointments have been made during that time. Numerous opinions of the attorney general have been issued recog-

nizing the appointive power of the governor, and up to this time no one has questioned the right of the governor to fill such vacancies by appointment. To permit such office to remain vacant until the legislature acts, or at least until there is an election, is simply unthinkable. A construction of our constitution must be given that will not defeat the obvious will of the people.

State ex rel. Lull v. Frizzell, 31 Minn. 460, 18 N. W. 316, involved the construction of amendments to our constitution providing, among other things, for biennial elections instead of annual elections and fixing the term of judges at 6 years instead of 7 years. In construing a provision relating to the election of judges, we said (31 Minn. 465, 18 N. W. 318):

"* * * There is no provision in the constitution for filling by appointment a vacancy in the office of a judge *caused by the expiration of the regular term for which he was elected.* * * * Hence, if no judicial officer can be elected in 1884, the office of probate judge in about half of the counties in the state, and possibly that of at least one district judge, might remain vacant for the space of two years, without their being any constitutional means of filling the vacancy. It is true that the present incumbents might resign before the expiration of the terms for which they were elected, and thus enable the governor to fill the vacancies by appointment. But as there is no law to compel them to resign, and they might either refuse or neglect to do so, *it is not to be presumed that the legislature intended to leave the very existence of any part of the judicial branch of the government dependent on any such contingency.* We might also add that if no judicial officer can be elected at the general election in 1884, it would almost seem to follow that none could be elected at any subsequent general election; for the fair inference from the whole clause is that only such classes of officers should be elected at subsequent general elections which can be elected at the first one. *We must therefore reject this construction,* both *because of* its unreasonableness, and *the injury to the public which would result from it.*" (Italics supplied in part.)

Maynard E. Pirsig, discussing the proposed judiciary article which was adopted in 1956, said, among other things:

"Vacancies in a judicial office are to be filled by appointment by the governor as under the present constitution."[1]

It is therefore essential that we hold that the controlling language of our constitution grants to the governor the power to fill vacancies by appointment and that the language "in the manner provided by law" is permissive in that it grants to the legislature authority, if it sees fit, to provide the manner in which the appointment shall be made. Until the legislature takes some action to exercise the power so granted to it, the fundamental power of appointment exists as it did prior to the amendment.

The history of the adoption of the new judiciary article can lead to no other conclusion. The article finally proposed and adopted by the people was the result of agitation for judicial improvement running over many years. In 1941, the Judicial Council appointed a committee, headed by former Chief Justice Charles Loring, to make a study of needed revision in the judicial system of this state. It made a report in 1942 for sweeping changes in our whole judicial system.[2]

No legislative action was taken on the proposals of this committee. In 1947, the legislature created a constitutional commission[3] to study and report on needed revisions to our whole constitution. The commission created several subcommittees to study and report on suggested changes in various articles of the constitution. One of such subcommittees dealt with the judiciary article.[4] Section 14 of its preliminary report dealt with the filling of vacancies and read:

"If the office of a judge becomes vacant, *the governor shall appoint*

---

[1]Pirsig, *The Proposed Amendment of the Judiciary Article of the Minnesota Constitution*, 40 Minn. L. Rev. 815, 839. The author acted as consultant to the committee that drafted the amendment to the judiciary articles of our constitution.

[2]See, Reports of the Judicial Council, Report of the Committee on Unification of the Courts; Pirsig, *The Proposed Amendment of the Judiciary Article of the Minnesota Constitution*, 40 Minn. L. Rev. 815.

[3]L. 1947, c. 614.

[4]See, Preliminary Report on Revision of the Judiciary Article of the Minnesota State Constitution, 32 Minn. L. Rev. 458.

some qualified person to fill such vacancy, who shall hold office until his successor is elected and qualified. Such successor shall be elected at the first election occurring more than one year after the vacancy occurred for a term of six years and until his successor is qualified. * * *" (Italics supplied.)[5]

As an alternative to this section, the committee recommended the adoption of the so-called American Bar Association merit plan for appointment and election of judges, sometimes called the "Missouri Plan."[6] The report further provided in § 14:

"* * * If the legislature provides for the appointment of such judge in the manner prescribed in section 11, subdivision (b), this section shall be inoperative."

The report of the commission failed to receive legislative approval and was never submitted to the people. However, the Minnesota State Bar Association became interested in the proposal for an amendment to the judicial article alone. It was given wide publicity among the members of the bar and was approved by the association at its annual meeting in 1953.[7] Section 11, as approved by the State Bar Association, read:

"Appointment. Whenever there is a vacancy in the office of a judge, the governor shall appoint in the manner provided by law a qualified person to fill the vacancy to hold office until his successor is elected and qualified."

It is apparent that the words "in the manner provided by law" were inserted when the alternative proposal to adopt the American Bar Association plan was dropped in order that the legislature might provide some method whereby candidates for appointment could be controlled by some kind of selection. It was not intended to destroy the power of the governor to make the appointment.

After this approval of the judiciary article by the State Bar Association, a committee was appointed to conduct an active campaign

---

[5]32 Minn. L. Rev. 467.

[6]See, 32 Minn. L. Rev. 466, § 11.

[7]The Bench and Bar of Minnesota, Vol. 11, No. 6, May 1954, p. 92.

for the adoption of the article.[8] Members of the bar were urged to work for its adoption.[9]

The crucial question here is what the drafters and the legislature intended by the language of the amended constitution that "[t]he successor shall be elected for a six year term at the next general election *occurring more than one year after such appointment*" (italics supplied), and what the people understood this language to mean when they adopted the proposed amendment.

In State ex rel. Babcock v. Black, 22 Minn. 336, decided December 21, 1875, we held that, where a vacancy in the office of probate judge occurs less than 30 days before a general election in a year when that office normally would be filled by election, appointment to fill the vacancy would not prevent a successor from being elected. We there said (22 Minn. 338):

"Section 10 was put in the constitution to provide for the exceptional case of a vacancy—for a case where the regular order of terms, and of elections for such terms, is broken in upon by a vacancy before the end of a regular term for which the judge was elected, and by the necessity to elect before the election would come on under the general rule. The election mentioned by the section is not one which comes in the regular course of such elections, as provided for by § 7, but an election which becomes necessary by the happening of the vacancy; and in order that such an election, thus coming on at a time different from that at which a judge would, in the regular and natural course of things, be elected, shall not be had without adequate notice to the people, it is provided that a successor shall be elected at the first annual election that occurs more than thirty days after the vacancy shall have happened. This means the successor whose election is made necessary by the vacancy.

"* * * The election in 1875 was not made necessary by the happening of the vacancy, nor was it appointed by § 10. It came in the regular course, and would have been held had there been no

---

[8]Id. Vol. 12, No. 6, May 1955, p. 77; Id. Vol. 12, No. 10, September 1955, p. 36.

[9]Id. Vol. 13, No. 11, October 1956, p. 15.

vacancy. It was not, therefore, such an election as is contemplated by that section, and was regular."

In State ex rel. Baxter v. Brown, 22 Minn. 482, decided April 15, 1876, without any mention of the Babcock case which was decided only a few months earlier, we held that, where a vacancy occurs less than 30 days before an election in a year when the office normally would not be filled by election, an appointee to fill the vacancy would hold over until the next election. We there said (22 Minn. 484):

"* * * While the general purpose of the constitution is to make judicial offices elective, this purpose is qualified by the provisions of § 10. As a part of the qualification the last sentence of the section is evidently inserted, in appreciation of the great importance of judicial offices, and of the consequent necessity that the electors, before being called upon to fill them, shall have such time for enquiry and consideration as will enable them to act with reasonable prudence and good sense in the premises. The evil sought to be provided against was, therefore, such as would result from an election occurring too soon after the happening of a vacancy, rather than such as would follow from deferring an election too long.

"*If*, as respects the question of computation of time, *the language of the constitution were, per se, so ambiguous as to admit of two constructions equally plausible,* it is, upon the foregoing considerations, clear that *the construction should be adopted which will, beyond a peradventure, accomplish this purpose of the constitution. This will require the construction which would give the electors the longest time for deliberation*—that is to say, which would give them thirty clear days between the day when the vacancy happened and the day of the election." (Italics supplied.)

The Babcock case was followed by Enger v. Holm, 213 Minn. 154, 6 N. W. (2d) 101. That case involved a vacancy which occurred when Mr. Justice Stone, who was one of the nominees in the primary, died more than 30 days before the general election. We simply held in that case that the candidate who stood fifth in number of votes received in the primary election would move up to fourth place to

take the place of Mr. Justice Stone. The case did not involve the question now before us.

All of these cases were decided prior to the amendment of the constitution. The Babcock and Baxter cases were decided before there was a primary election. Candidates simply filed for election, and about the only requirement respecting notice of the election was that the township or city clerk should post the notice in three public places. G. S. 1866, c. 1, § 4. Many changes have occurred in our election laws since those two decisions. Judges and others are now elected on a nonpartisan ballot. While numerous candidates conceivably can file at the primary election, only two for each office are considered at the general election. The complexity of modern society makes it imperative that ample opportunity be given the people to evaluate the qualifications of candidates for judicial positions. Clearly, that is what the new judiciary article intended to accomplish.

In the report of the constitutional commission, we find the same alternative recommendations as in the report of the subcommittee on the judiciary. Article 6, § 9, as proposed by the commission, contains this language (Report of the Constitutional Commission of Minnesota, p. 43):

"The legislature may provide that a vacancy in the office of justice of the supreme court shall be filled by appointment by the governor from a list of three persons nominated by a non-partisan judicial commission created by law. A person so appointed shall serve until his successor is elected for a six-year term at the first general election held more than one year after the occurrence of the vacancy, and when a justice once has been elected and is a candidate for re-election for the next and succeeding terms, the vote shall be on the question whether he shall be continued in office."

Section 13 of the commission's proposal provided (Id. 45):

"If the office of a justice or judge becomes vacant, except as otherwise provided by section 9, the governor shall appoint a qualified person to fill the vacancy to hold office until his successor is

elected and qualified. This successor shall be elected at the first general election held more than one year after the occurrence of the vacancy and his term of office shall be six years and until his successor is qualified."

In its comments on § 13 the commission said (Ibid.):

"This section increases the spread between appointment and the appointee's subsequent candidacy for election from 30 days to one year. The 30-day period, as provided in the present Section 10, has proved too short. *Complications arise when a vacancy occurs after the primary election but more than 30 days prior to the final election.* In addition, the short period does not give sufficient time to enable observation of the competence developed by the appointee prior to the election." (Italics supplied.)

Similar language is found in Pirsig's article in 40 Minn. L. Rev. 839, where he said:

"* * * a desirable change has been made in increasing from 30 days to one year the period of time which must elapse between the appointment and the next general election at which the appointee's successor is elected. This will enable the public to become better acquainted with the appointee, who usually is a candidate to succeed himself, and *it will avoid the embarrassing situations which arise when a vacancy occurs after the primary election has taken place but more than 30 days remain before the next general election.*" (Italics supplied.)

It seems quite obvious to us that these references to the embarrassing situations that arise when a vacancy occurs between the primary and general elections pertain to a situation such as is illustrated by Flakne v. Erickson, 213 Minn. 146, 6 N. W. (2d) 40. In that case, Judge Mathias Baldwin was elected for a 6-year term in Hennepin County in November 1940. If he had lived, his term would have expired on the first Monday of January 1947. He died October 1, 1942, after the primary election but more than 30 days before the general election. Fifteen candidates filed for the office by peti-

tion.[10] We held that there was no limit to the number of candidates that can file by petition, under our former constitutional provision. The same would be true here if such filings are permitted at all. If one candidate can file by petition a few days before election, an unlimited number could file, and the people would have no way of evaluating the qualifications of such candidates. It seems clear that it was to obviate that situation that the length of time between the appointment and the election of a successor was extended.

Throughout the discussions and advocacies for adoption of the amendment, the people and bar were informed that if the amendment were adopted any judge appointed to fill a vacancy would not have to run for election until more than one year after the appointment. We have already quoted Pirsig's comment in his discussion of the proposed article appearing in 40 Minn. L. Rev. 815. In a report by the State Bar Association committee as to the changes that would result from the adoption of the amendment, we find the following in The Bench and Bar of Minnesota, Vol. 12, No. 6, May 1955, p. 77:

"No judge required to run for re-election until one year after appointment instead of thirty days."

In an editorial in The Minneapolis Star, October 24, 1956, p. 18A, col. 1, we find the following:

"* * * No appointive judge would stand for election until he had served at least a year."

In a circular distributed to the people by the League of Women Voters of Minnesota, we find similar language.

In a statement made by the attorney general as required by Minn. St. 3.21, explaining the effect of the adoption of the amendment, we find the following:

"The effect thereof [adoption of the amendment] will be that no judge appointed to fill the vacancy will be required to run for election until 1 year after his appointment, instead of 30 days as at present." Statement Attorney General, No. 86a-34, June 12, 1956.

---

[10]See, 1943 Legislative Manual, p. 453.

360

It could be argued that the same rule applies to the new provision of our constitution, as construed by our former cases, as applied to the old. If that had been the intention of the drafters of the proposed amendment as explained to the legislature, they would hardly have said that complications arise when a vacancy occurs after the primary but more than 30 days prior to the general election. Obviously, no primary would be held if the office would not expire during the year of the election. This language could hardly have any meaning except that the new provision was intended to eliminate a situation such as we had in the case of the death of Judge Baldwin in Flakne v. Erickson, *supra*.

More convincing probably is the fact that it was possible for a vacancy to occur after the primary and more than 30 days prior to the general election under the former constitution. That was the situation in Enger v. Holm, *supra*. It is not possible for a vacancy to occur after the primary and more than one year before the general election under the present constitution.

Respondent Barbeau has suggested many hypothetical situations which may arise if we hold that one appointed to fill a vacancy occurring in a judicial office between the primary and general elections in a year when that office normally would be filled by an election would hold until the next election more than one year after the appointment. We must admit that the constitutional amendment is not as clear as we would like to have it and that no matter what construction we place upon it some problems will be created. Probably the worst would be the possibility of an unseemly scramble for judicial office by self-nominated persons and the possibility of their election when the people have no opportunity to evaluate the relative qualifications of such candidates. In the case before us, both respondents are without doubt qualified to hold the office. However, that may not be true in another case of this kind, and it is easily conceivable that one wholly unqualified to hold the office could be elected in this manner without giving the people an opportunity to evaluate the relative qualifications of numerous candidates at all. Primary elections are intended to reduce the number of candidates to not

more than two for each office. This is particularly important in dealing with judicial office, where the qualifications of an incumbent are of such great importance. If numerous candidates can file between the primary and general elections without allowing time for the electorate to evaluate their qualifications, much harm can be done.

One of the possibilities mentioned is where a vacancy occurs after a general election in which a candidate other than the incumbent is elected. If the primary and general elections are regularly held, and the people have had a chance to exercise their free choice, undoubtedly the election should be upheld. The main purposes of our constitution and election laws have in that case been accomplished. On the other hand, suppose that during a year when an incumbent normally would run for reelection a vacancy occurs shortly before the time for filing for the office and the vacancy is filled by appointment. We think no one would contend that such appointee, under our present constitution, would have to stand for election during the year of his appointment. There are so many possibilities that could be conjured up by a fertile imagination under this constitution that all we can do is to meet these situations as they arise, giving effect to the language of the constitution when that can be done without destroying the purpose intended to be accomplished by its adoption. The test ought to be whether there has been a fair opportunity for the voters to make an intelligent choice.

In State ex rel. Dosland v. Holm, 202 Minn. 500, 506, 279 N. W. 218, 221, a situation somewhat similar was under consideration. We there said:

"The facts here appearing are such as must convince any fair-minded person that there was no 'election' in fact because, clearly, there was no *choice*. * * * Nowhere and in no manner was any effort made to bring before the voters of the district the choice of a successor to Judge Roeser. What the court said in State ex rel. Kleist v. Donald, 164 Wis. 545, 553, 160 N. W. 1067, 1070, correctly states the rule and is decisive of this issue: '(1) Where there is in fact an election at the time and place designated by law, such election is valid although the statutory notice is not given. (2) Where the failure to comply

with the law results in a few out of a large number of electors exercising the right to vote at the time and place designated by law, there is no election.' * * *

"* * * Too obvious for further comment, no one can reasonably claim that there was a 'choice' on the part of the electors to fill this important office."

State ex rel. Wells v. Atwood, 202 Minn. 50, 51, 277 N. W. 357, 358, involving an election to the office of railroad and warehouse commissioner, is illustrative of the approach that should be made to a construction of the constitutional provision before us. We said there:

"In view of our elaborate and detailed enactments relating to both special and general elections, the nominations of candidates at primaries for the general election, the filing by petition of candidates, and the preparing and publishing of the official ballot by the secretary of state showing the offices for which votes may be cast, it is entirely clear that a reasonable time must elapse between the vacancy and the election at which the vacancy may be filled. In this instance it was only eight days—a time wholly insufficient to give the electors in all the election districts notice, to say nothing of having ballots furnished for the occasion, or having that publicity of candidates which an election contemplates. In relation to a judicial office, the constitution (art. 6, § 10) provides that in case of vacancy the successor shall be elected at the first annual election 'that occurs more than thirty days after the vacancy shall have happened.' "

It is said that Minn. St. 202.14 covers judicial office as well as other nonpartisan offices. It is true that the statute speaks in general terms of all nonpartisan offices and does permit the filling of a vacancy created between the primary and general elections by petition. The statute cannot override the express provisions of our constitution with respect to judicial positions. Our constitution contains no provision with respect to other nonpartisan offices similar to that relating to judicial offices. Obviously, the people have seen fit to differentiate between candidates for judicial office and for other nonpartisan offices with regard to the necessity of having an opportunity to evaluate their qualifications. We must hold that in so far as

§ 202.14 purports to authorize filing for a judicial office upon a vacancy between the primary and general elections it is in contravention of Minn. Const. art. 6, § 11, and therefore cannot stand.

There were other significant changes in the draft of the judiciary article as it was formulated and finally submitted and adopted. In the preliminary report of the committee the language of § 14 (which with modifications became § 11 of the article as adopted) read in part as follows:

"* * * Such successor shall be elected at the first election occurring more than one year after the *vacancy occurred* * * *." (Italics supplied.)[11]

In the report of the constitutional commission, this language was changed to read:

"* * * This successor shall be elected at the first general election held more than one year after the *occurrence of the vacancy* * * *." (Italics supplied.)[12]

This language was again changed by the state bar committee[13] and, as finally submitted to the legislature, adopted by it, and adopted by the people, reads (Minn. Const. art. 6, § 11):

"* * * The successor shall be elected for a six year term at the next general election occurring more than one year *after such appointment*." (Italics supplied.)

It would seem that the change was intended to fix definitely the time from which the year should run.

Another change made was that in art. 6, § 4, of the constitution, dealing with the term of office of district judges. We there find the following language:

"* * * In each judicial district, one or more judges, as the legislature may prescribe, shall be elected by the electors thereof, whose term of office shall be six years, * * *."

---

[11]See, 32 Minn. L. Rev. 467.

[12]Report of the Constitutional Commission of Minnesota, p. 45.

[13]See, Minutes of Meeting of the Constitutional Revision Committee, State Bar Association, October 23, 1954.

In the amendment, art. 6, § 8, provides in part:

"The term of office of all judges shall be six years *and until their successors are qualified, * * *.*" (Italics supplied.)

Obviously the addition of the words "until their successors are qualified" might be construed to mean that the term under certain conditions could exceed 6 years.

Our attention has been called to a number of decisions of foreign courts. It seems that decisions can be found supporting either view, but these decisions are of little value without comparison of the constitutional provisions upon which they are based. We have found no constitutional provision identical with ours, although there is much similarity between some of them. French v. Jordan, 28 Cal. (2d) 765, 172 P. (2d) 46; Hillman v. Boone, 190 Md. 606, 59 A. (2d) 506; State ex rel. Foughty v. Friederich (N. D.) 108 N. W. (2d) 681; State ex rel. Davis v. Brown, 161 Ohio St. 346, 119 N. E. (2d) 277; and Budge v. Gifford, 26 Idaho 521, 144 P. 333, are of interest in supporting the views of respondent Amdahl, and People ex rel. Jackson v. Potter, 47 N. Y. 375; McDonnell v. State ex rel. Jones, 199 Ala. 240, 74 So. 349; and Simpson v. Willard, 14 S. C. 191, could be said to support the opposite view. However, we are construing our own constitution in the light of the purposes sought to be accomplished by this amendment as we see it, and none of the cases from foreign jurisdictions that we have found is controlling to the point that we feel obliged to follow it. It follows that the appointment of Amdahl holds over until the next general election more than one year after his appointment.

THOMAS GALLAGHER, JUSTICE (dissenting).

1. At the time of his death, Judge Rogers held the position of sole nominee for the position of judge of the District Court, Fourth Judicial District, for a 6-year term commencing January 7, 1963. His death accordingly created a vacancy in such nomination which the legislature had previously made provision for filling. Thus, Minn. St. 202.14, subd. 1, provides:

"A vacancy in a nomination exists when after the primary election

any person who was nominated to a nonpartisan or political party office dies, withdraws or for any reason ceases to be the nominated candidate for that office. When a vacancy in a nomination occurs a nomination to fill the vacancy may be made in the manner provided in subdivisions 2, 3, and 4."

Subd. 2 of this statute provides for partisan offices and is not applicable here.

Subd. 3 provides:

"If there is no proper committee to fill the vacancy as provided in subdivision 2, or if a vacancy occurs in a nonpartisan office, then the person receiving the next highest number of votes for the office at the primary election shall be the candidate for the office."

This subdivision is not applicable here, where Judge Rogers was the only candidate for the nomination.

Subd. 4 provides:

"If there is no proper committee to fill the vacancy as provided in subdivision 2, or if there is no person who may be nominated under subdivision 3 and a vacancy exists by reason of this fact, the vacancy may be filled by the proper officer placing upon the ballot the name or names of candidates as are nominated by nominating petition in the manner provided in sections 202.09 to 202.12. Every voter is eligible to sign a petition choosing a nominee to fill the vacancy."

With respect to nominations by nominating petitions referred to in § 202.14, subd. 4, the statutory provisions are as follows:

§ 202.09, subd. 1. "A petition for nomination of a candidate may be signed by electors resident within the district or political division from which the candidate is presented, as follows:

\* \* \* \* \*

"(b) If for a congressional or judicial district office, by five percent of the entire vote cast in the district at the last preceding general election, or 1,000, whichever is the lesser."

Section 202.12 provides:

"After the signature of each signer there shall be written his post

office address. Following the facts required to be stated in each petition signed by the voter shall be an oath in the following form: 'I solemnly swear (or affirm) that I know the contents and purpose of this petition, that I do not intend to vote at the primary election for the office for which this nominating petition is made, and that I signed the same of my own free will.' No signature shall require notarization or certification before any officer, but each signer in so signing shall be guilty of perjury for making a false oath therein."

Since here it is not disputed that under the foregoing statutes Judge Barbeau was nominated for the judicial position commencing January 7, 1963; and was likewise duly elected thereto at the general election on November 6, 1962, it is my opinion that at no time was there a vacancy in such position calling for a gubernatorial appointment under Minn. Const. art. 6, § 11.

2. This court appears to have arrived at a like conclusion in Enger v. Holm, 213 Minn. 154, 6 N. W. (2d) 101. The constitutional provision then in effect, Minn. Const. art. 6, § 10, was similar to the present art. 6, § 11, except that under its provisions appointees to judicial vacancies were required to be elected at the first annual election occurring "more than thirty days after the vacancy" rather than at the next general election occurring "more than one year after such appointment" as presently provided. There, Royal A. Stone held one of the positions of associate justice of the supreme court for the term expiring January 4, 1943, and a like position was held by Andrew L. Holt. By virtue of the primary election held September 8, 1942, in which ten persons were candidates, Mr. Justice Stone and three others (Mr. Justice Holt was not a candidate) became nominees for the two judicial terms described. Five days after the primary election and prior to the general election, Mr. Justice Stone died. Shortly thereafter, Clifford E. Enger submitted a nominating petition to fill the vacancy in the nomination created by the death of Mr. Justice Stone, contending that his death had nullified all primary nominations for his position and eliminated the right of the fifth highest primary candidate therefor to be advanced as a nominee for one of the terms commencing January 4, 1943. Governor Harold E. Stassen then appointed Maynard E.

Pirsig to fill the vacancy caused by the death of Mr. Justice Stone. In denying Enger's contentions, this court stated (213 Minn. 156, 6 N. W. [2d] 102):

"A successor to Mr. Justice Stone would be elected at the forthcoming election in the regular course of things. If he had lived and would have been elected, he would have been his own successor. If the relator's contention that the election of a successor can be held only under the provisions relating to filling vacancies is correct, the election of a successor in the regular course of things is not only prevented, but the election machinery which has been set in motion for that purpose is arrested.

\* \* \* \* \*

"Here, a successor to fill the vacancy in question will be elected at the November election for the full constitutional term of six years. Whether a successor be elected in regular course or to fill a vacancy under § 10, the election is for the constitutional term. \* \* \*

\* \* \* \* \*

"We said in Flakne v. Erickson, 213 Minn. 146, 6 N. W. (2d) 40:

" 'So, we think it is clear that if and when the governor makes an interim appointment to fill the mentioned vacancy the appointee would hold the office until a successor is elected and has qualified, and that the one elected at the next general election cannot qualify except for the regular term beginning in January 1943.'

"It follows as a matter of course that the successor to Mr. Justice Stone is to be elected at the forthcoming election in November in the regular course. Under art. 7, § 9, the successor cannot qualify and take office until the first Monday in January 1943. The vacancy is filled by the appointment of Mr. Justice Maynard E. Pirsig, who is entitled to occupy the office until the first Monday in January 1943, the date on which the terms of the judges elected in November shall begin. Likewise, Mr. Justice Streissguth is entitled to fill the vacancy caused by Mr. Justice Holt's resignation until the same time."

The foregoing clearly indicates that, where a vacancy in a judicial office occurs after there have been nominations for the next term

of such office, a gubernatorial appointment to fill such vacancy is an interim appointment only, and expires with the expiration of the regular term of the judicial office to which the appointment is made. Accordingly, it is my opinion that Judge Amdahl's appointment would expire with the expiration of the regular term of the position held by Judge Rogers at the time of his death; and that Judge Barbeau was duly nominated for and elected to the judicial position commencing January 7, 1963. See, People ex rel. Jackson v. Potter, 47 N. Y. 375; see, also, McDonnell v. State ex rel. Jones, 199 Ala. 240, 74 So. 349; Simpson v. Willard, 14 S. C. 191.

3. To me, this conclusion appears consistent with the intent of the people expressed in Minn. Const. art. 6, §§ 8 and 11, that judicial offices be filled by elective rather than appointive processes; and that the power of the chief executive to fill vacancies therein be limited to situations where elective processes are not available. State ex rel. La Jesse v. Meisinger, 258 Minn. 297, 103 N. W. (2d) 864; Enger v. Holm, *supra*; State ex rel. Baxter v. Brown, 22 Minn. 482. A contrary construction could well result in the nullification of such intent in many possible situations. Thereunder, if an incumbent judge were a candidate for election to the term succeeding that of his present position and were defeated therefor in the general election he could then resign to permit a gubernatorial appointment to fill the vacancy thus created and thereby completely nullify the will of the electorate. Or an incumbent judge might refrain from being a candidate for the term succeeding that of his position, and subsequent to the nomination of another qualified person therefor, resign so that by gubernatorial appointment to his vacated position the elective processes would be thwarted. Or situations might arise where incumbents by resignations at convenient times before election would thereby insure continued, if not perpetual, judicial service through appointive rather than elective procedures.

By reason of all of the foregoing, I am firmly convinced that the constitutional provision having reference to filling vacancies in judicial position by gubernatorial appointment (art. 6, § 11) has no application where there are candidates duly qualified and nominated for the

succeeding term of such positions and a general election is available to finally determine whom the electorate selects therefor.

MURPHY, JUSTICE (dissenting).

I concur in the dissenting opinion of Mr. Justice Thomas Gallagher.

MR. FRANK T. GALLAGHER took no part in the consideration or decision of this case.