STATE OF MINNESOTA *ex rel.* Legrand W. Lull *vs.* GILBERT A. FRIZZELL.

January 25, 1884.

Constitution — Amendments affecting Terms of Office. — The amendments to articles 5, 6, and 7 of the constitution, submitted by chapters 1, 2, and 3, Laws 1883, and adopted at the last general election, construed as follows:

*First.* The official terms of *all* state, county, or other officers elected in November, 1883, commenced, and that of their predecessors terminated, on the first Monday of January, 1884.

*Second.* All judges of the supreme and district courts, *whenever elected,* are now holding for a term of *six* years from the first Monday in the January next succeeding their election, except that those whose terms of six years would otherwise terminate in January, 1886, will continue to hold their office until January, 1887.

*Third.* The state auditor and clerk of the supreme court, who were elected in November, 1881, are now holding, by virtue of the amendments to articles 5 and 6, for a term of four years from the first Monday in January, 1882, which, however, is extended, by the amendment to article 7, until the first Monday of January, 1887.

*Fourth.* All state, county, or other officers, elected in November, 1883, for a term of two years, will continue to hold their offices until the first Monday in January, 1887.

*Fifth.* Where the official term of any judicial officers expired in January, 1884, or will expire in January, 1885, their successors will be elected at the general election in November, 1884; and thereafter, unless the legislature shall otherwise provide, judicial officers will be elected at the general biennial election next preceding the expiration of the terms for which their predecessors were elected.

**Same—Compensation of Salaried Officer whose Term is Shortened.**

    *Sixth.* Where the official term of an officer, whose salary is fixed at an annual sum, has been shortened by these constitutional amendments, his salary ceases when his term ceases, and he is only entitled to compensation, up to the time the duties of his office ceased, *pro rata.*

Proceeding under Gen. St. 1878, *c.* 79, to determine the right of the defendant to continue to hold and exercise the duties of the office of county treasurer of Olmsted county.

On November 8, 1881, at the general fall election, defendant was duly elected such county treasurer for the term of two years from and after March 1, 1882, and duly qualified and entered upon the performance of his duties as such officer, and was so continuing to act as such officer, when this proceeding was instituted in this court. By Sp. Laws 1879, *c.* 305, the salary of the county treasurer of Olmsted county was fixed at $1,500 per annum and the fees of the office.

The relator having been duly elected to the office of such county treasurer, on November 6, 1883, at the general fall election, on January 7, 1884, duly complied with all the requirements of statute, and qualified as such officer, and demanded of the defendant posession of said office, which demand was refused. Thereupon the Attorney General instituted this proceeding. On the argument, the above facts were conceded, and defendant claimed to be lawfully in possession of the office, on the ground that his term of office did not expire till March 1, 1884.

    *W. J. Hahn,* Attorney General, and *Frank B. Kellogg,* for the State.
    *Jones & Gove,* for defendant.

    MITCHELL, J. By chapters 1, 2, and 3, Laws 1883, the legislature submitted to the people for their approval or rejection, at the last general election, the following amendments to the constitution, and a majority of the electors present, and voting for or against them, having voted in favor of each of the proposed amendments, the governor made proclamation thereof on the fourth day of January, 1884, and the same thereupon took effect and were in force as a part of the constitution of this state :

    *First.* An amendment to section 5 of article 5, fixing the official term of the state auditor at four instead of three years; the official

term of all other state officers of the executive department remaining or being fixed anew at two years, as before.

*Second.* An amendment to article 7, by adding thereto an additional section, to read as follows:

"Sec. 9. The official year for the state of Minnesota shall commence on the first Monday in January of each year, and *all terms of office shall terminate at that time;* and the general election shall be held on the first Tuesday after the first Monday in November. The first general election for state and county officers, except judicial officers, after the adoption of this amendment, shall be held in the year A. D. 1884, and thereafter the general election shall be held biennially. All state, county, or other officers elected at any general election, whose terms of office would otherwise expire on the first Monday in January, 1886, shall hold and continue in such offices respectively until the first Monday in January, 1887."

*Third.* Amendments to sections 2, 3, and 4, of article 6, fixing the official terms of judges of the supreme and district courts at six instead of seven years, and that of clerk of the supreme court at four instead of three years, as theretofore.

These several amendments are in a sense *in pari materia,* all having a common object, and must therefore be considered together, and so construed, if possible, as to give force and effect to all their provisions. The common object was to provide for biennial elections. The means employed to accomplish this were—*First,* to fix all constitutional terms of office at an even number of years. Some were lengthened, others shortened. By the amendment to article 5, the official term of state auditor was increased from three years to four; and, by the amendment to article 6, the official term of judges of the supreme and district courts was shortened from seven years to six, and that of clerk of the supreme court increased from three years to four. The next means adopted to bring about the desired change was the amendment to article 7, by which the official year is made to commence on the first Monday in January, at which date all terms of office are made to terminate. This amendment further fixed the time at which the first general election, under the biennial system, should be held. This was fixed in 1884. This time was doubtless adopted for two rea-

sons: *First*, because it would work less disturbance in the existing order of things than to defer it until 1885; and, *secondly* and chiefly, because presidential elections always occur in even-numbered years.

In order to bridge over from the old to the new system, another thing remained to be provided for. As fixed by the constitution or existing statutes, the terms of many state and county officers, elected in 1883 or prior years, would expire in January, 1886. But, as there would be no election in 1885, their successors could not be elected until November, 1886. Hence, the last clause of this amendment provided that "all state, county, or other officers, elected at *any* general election, whose terms of office would *otherwise* (*i. e.* but for this clause) expire on the first Monday in January, 1886, shall hold and continue in such offices respectively until the first Monday in January, 1887."

These amendments became the supreme law of the state on the fourth day of January, 1884, and entirely superseded all inconsistent provisions of law on the same subjects. They apply equally to present incumbents and to those who may hereafter be elected. Their provisions are general and without exceptions. If they do not apply to the official terms of present incumbents, there is now no provision of law governing such cases. Had the legislature intended to exempt present incumbents, or those elected in November, 1883, from any of the provisions of these amendments, it is fair to presume that they would have so said in express terms. To do so would partially defeat the very object which all of these amendments were intended to accomplish. The clause of the amendment to article 7, fixing the time of holding the first general election under the biennial system in 1884, we construe, not as requiring an election at that time of *all* state and county officers, but only of such as may, under existing laws, be required to be elected at that time. This will necessarily include a large number of county officers where the terms of •present incumbents will expire in January, 1885. It may also include state or county officers where vacancies occur by reason of death, resignation, or other such causes. That this clause does not mean that there shall be an election for *all* state and county officers next November, we conclude for the following, among other, reasons: *First*, it is

not dealing with terms of office,—that matter has been elsewhere disposed of; *second*, to so construe it would virtually render it inconsistent with other amendments, which expressly fix the official terms of the various officers; *third*, such a construction would render the next and following clause of no effect and without meaning, for if there is to be an election for all state and county officers in 1884, there will be none whose terms of office expire in January, 1886. It is not without significance that this amendment was mainly copied from one submitted to the people of Wisconsin, (Laws Wis. 1882, c. 290,) which contains the word "all," which our legislature has *ex industria* omitted.

The only serious difficulty we have met in construing this clause is what force or effect to give the expression, *"except judicial officers."* This exception is found in the Wisconsin amendment already referred to, of which this section is almost a literal transcript. The meaning as well as propriety of this exception in that state is apparent from the fact that she elects judicial officers at a special election held on the first Tuesday of April, and not at the general election in November. It might be suggested that our legislature retained this exception through inadvertence, not observing its inapplicability to our system. But we have no right to assume this. Neither would this remove the difficulty. We must presume that this exception was inserted for a purpose. One construction suggested is that it *prohibits* the election of *any* judicial officer at the general election in 1884. To this there are two very obvious objections: *First*, there is no conceivable reason for such a prohibition. It would neither aid nor further the system of biennial elections, which was the main purpose which the legislature and the people had in mind. Under that system there could be no possible reason why judicial as well as other officers might not be elected, if necessary, in 1884. Another objection to such a construction is that it might and naturally would result in a total suspension of the functions of a portion of the judicial department of the government in some parts of the state for two years. Under these amendments, the official term of one judge of the district court expired on the seventh of the present month; the official term of another will expire in January, 1885. The official terms of many—presumably

about one-half—of the probate judges in the state will also expire in January, 1885. By the constitution these officers hold for a fixed term, *and not until their successors are elected and qualified.* Const. art. 6, §§ 4, 7. There is no provision in the constitution for filling by appointment a vacancy in the office of a judge *caused by the expiration of the regular term for which he was elected.* Id. § 10. Hence, if no judicial officer can be elected in 1884, the office of probate judge in about half of the counties in the state, and possibly that of at least one district judge, might remain vacant for the space of two years, without their being any constitutional means of filling the vacancy. It is true that the present incumbents might resign before the expiration of the terms for which they were elected, and thus enable the governor to fill the vacancies by appointment. But as there is no law to compel them to resign, and they might either refuse or neglect to do so, it is not to be presumed that the legislature intended to leave the very existence of any part of the judicial branch of the government dependent on any such contingency. We might also add that if no judicial officer can be elected at the general election in 1884, it would almost seem to follow that none could be elected at any subsequent general election; for the fair inference from the whole clause is that only such classes of officers should be elected at subsequent general elections which can be elected at the first one. We must therefore reject this construction, both because of its unreasonableness, and the injury to the public which would result from it.

In some states, and notably in the one from which this amendment was borrowed, it is deemed advisable not to elect judicial officers at the general election, but at a separate election held for that purpose. This is the reason why this exception was inserted in their constitution by the state of Wisconsin. It is fair to presume that in copying from the constitution of that state, our legislature and the people had this fact in mind. Prior to this, the time of holding elections in our state was entirely under the control of the legislature. By this amendment it was proposed to fix the time of holding general elections by the constitution, and thus take the matter out of the hands of the legislature. But the time of electing judicial officers was excepted from the operation of this constitutional provision, so that in

v.31—30

case hereafter it should be deemed advisable to provide for separate elections for such officers, it would be in the power of the legislature to do so. But, until and unless such legislation is had, judicial officers will continue to be elected at the general November elections. In short, the effect of this exception is not *prohibitory*, but to leave it *not obligatory* to elect judicial officers at the general elections. We are aware that this construction is liable to criticism, but it is the only one which has been suggested which will not result in great public evils, and at the same time give the language a reasonable and rational meaning. The result of all this is:

*First.* That the official terms of *all* state, county, or other officers elected in November, 1883, would commence, and that of their predecessors terminate, on the first Monday, (the seventh,) of January, 1884.

*Second.* That all judges of the supreme and district courts, *whenever elected*, are now holding for a term of *six* years from the first Monday in the January next succeeding their election, except that those, if any, whose term of six years would otherwise terminate in January, 1886, will continue to hold their office until January, 1887.

*Third.* That the state auditor and clerk of the supreme court, who were elected in November, 1881, are now holding, by virtue of the amendment to articles 5 and 6, respectively, for a term of four years from the first Monday in January, 1882; *i. e.*, until the first Monday in January, 1886, which, however, is extended, by the last clause of the amendment to article 7, until the first Monday in January, 1887.

*Fourth.* That all state, county or other officers elected in November, 1883, for a term of two years, will continue to hold their offices until the first Monday in January, 1887.

*Fifth.* That where the official term of any judicial officer expired in January, 1884, or will expire in January, 1885, or where a vacancy in the office of any judge occurs more than 30 days before the next general election, their successors will be elected at the general election in November, 1884. And thereafter, unless the legislature shall otherwise provide, judicial officers will be elected at the general biennial election next preceding the expiration of the regular term for which their predecessors were elected; and, where the office of

any judge becomes vacant before the expiration of the regular term for which he was elected, at the first general biennial election that occurs more than 30 days after the vacancy shall have happened.

It only remains to consider what amount of salary the respondent is entitled to. The salary of the treasurer of Olmsted county is fixed at $1,500 per annum. Sp. Laws 1879, *c*. 305. It is elementary that there is no contract, express or implied, between a public officer and the government, whose agent he is, for the continuance of his office or the permanency of his salary for the full term for which he was elected. Public officers have no proprietary interest in their offices, or any right of property in the prospective compensation attached thereto. Public offices, in theory, at least, are held and exercised for the benefit of the public and not of the incumbent. Therefore, it is in all cases competent for the people, in their sovereign capacity, to abolish an office or shorten a term, or reduce or take away entirely the salary attached to it, without regard to the interests or expectations of the incumbent as to the prospective compensation. Cooley, Const. Lim. *276; *County of Hennepin* v. *Jones,* 18 Minn. 182, (199;) *Connor* v. *City of New York,* 2 Sandf. 355. And when an office, or the term of an office, ceases, the salary ceases. It is immaterial whether the official term terminates by death, resignation, or the repeal or change of the law creating the office. Where the duties of a public officer, entitled to an annual salary, continue, as in this case, through the entire year, the incumbent is entitled to his salary only for the space of time during which the duties are required to be performed. A repeal of the law creating the office, before the expiration of the year, would stop the accruing salary at the time when the duties ceased. *Ex parte Lawrence,* 1 Ohio St. 431. Hence, in this case, respondent's salary ceased on the seventh day of January, when his term of office terminated, and he would only be entitled to compensation up to that date, at the rate of $1,500 for a full year of 12 months; that is, $1,250 for the 10 months during which he was required to perform the duties of the office.

The questions involved in the construction of these constitutional amendments being of public importance, which it was desirable

should be authoritatively settled for the guidance and information both of public officers and the electors of the state, the counsel in this case, and particularly the attorney general of the state, expressed a desire that all these questions, as far as possible, should be considered at this time. For this reason we have deemed it advisable to consider generally the construction of all these amendments, and to pass upon some matters not strictly necessary for the determination of the present case.

The state is entitled to a judgment of ouster, as prayed for in the petition, but without costs.

Ordered accordingly.