# E. THOMAS O'BRIEN v. HARRY J. O'BRIEN AND OTHERS.[1]

October 16, 1942.

No. 33,417.

[1]Reported in 6 N. W. (2d) 47.

*George B. Leonard* and *David J. Erickson,* for petitioner.

*Victor J. Michaelson,* for respondent Harry J. O'Brien.

*J. A. A. Burnquist,* Attorney General, *Chester S. Wilson,* Deputy Attorney General, *George B. Sjoselius,* Assistant Attorney General, and *Franklin E. Ebner,* County Attorney of Crow Wing County, for respondents Mike Holm and county auditors.

LORING, JUSTICE.

The case not having been adequately presented on the original hearing, the opinion previously rendered[2] is withdrawn and the order denying the application for a writ is vacated.

This is an application for a writ under Minn. St. 1941, § 480.04 (Mason St. 1927, § 132) directing the county auditors in the sixth congressional district to desist from placing the name of Harry J. O'Brien on the general election ballot as a candidate of the Democratic party for the office of representative in congress from that district at the general election to be held November 3, 1942.

The petition involves the construction of Minn. St. 1941, §§ 202.24, 205.72 (Mason St. 1940 Supp. §§ 601-3[3]e, 601-6[7]*l*), and other provisions of the election laws. Both O'Briens were candidates for the Democratic nomination for congress in the sixth district at the primary election September 8, 1942. The petitioner received 872 votes and Harry J. O'Brien received 599 votes for the nomination. The sum of all the votes cast for Democratic nominations did not equal ten per cent of the average vote cast for state officers of that political party at the last general election in that district. Section 202.24 provides that when that occurs "no candidate of that political party within that territory shall be nominated." That section further provides:

---

[2]Filed October 12, 1942, but not published.

"and in such case, *such candidates* of such political party may be nominated by petition as provided by sections 202.19 to 202.22, and the candidates of any such political party failing to receive such ten per cent of such vote shall be eligible for nomination *under the terms of this provision.*" (Italics supplied.)

The political supporters of each of the O'Briens then filed certificates of nomination with the county auditor of the county of their residence, petitioner here being filed as a "Democrat," whereas the Harry J. O'Brien certificate's only designation of party was "That the said candidate represents the principles of 'Real Democrats.'"

■ It is the first contention of the petitioner that the phrase "such candidates" italicized above refers to the ones receiving the highest vote at the party primary which resulted in no nomination, and that he alone, having received the larger number of votes, is eligible to the party nomination by petition. With that contention we cannot concur. The word "candidate" is used in the statutes sometimes referring to candidates for nomination at the primary and sometimes with reference to candidates for election at the general election. The context must indicate which is intended. The phrase under consideration obviously refers to the general election. As we view the statute, when a political party fails to cast at its primary at least ten per cent of the average vote cast for state officers of that party at the last general election in the district, the primary so far as that political party is concerned results in no nomination. The party then may nominate its candidates by petition. The party primary having resulted in no nomination, the ban of § 202.19 (§ 601-3[3]) against persons who had been candidates at the primary election is lifted, so far as party nominations by petition are concerned, by the further provision of § 202.24 making candidates for the party nomination at the previous primary eligible for nomination by petition "under the terms of this provision." To hold as contended for by petitioner would be to resurrect and breathe life and controlling im-

portance into the vote which the statute states does not result in a nomination.

Ex. Sess. L. 1912, c. 2, § 13, provided that in case a party failed to cast the required vote a nomination of candidates could be made by party committees and, in the absence of a committee, by petition. But L. 1913, c. 389, § 5, eliminated this provision and left only that for filling the vacancy by petition as now provided. Whether the provisions of Ex. Sess. L. 1912, c. 2, § 13, superseded or conflicted with § 11(g) of that same chapter we need not here determine because of the 1913 amendment, which eliminated nominations by party committee.

It may be that provisions of the present law create a situation that embarrasses a party delinquent of the required primary vote by authorizing too many candidates at the general election for the same office, but the wisdom of the legislative provision is not for us to question. Adequate provision is made for a party to select a single candidate at the primary, and without a minimum provision such as the ten per cent requirement other abuses would be encountered.

Petitioner's next contention, relying on Brown v. Jensen, 86 Minn. 138, 90 N. W. 155, and following cases, is that Harry J. O'Brien having been filed as a "Real Democrat," his petition is in violation of Minn. St. 1941, § 205.72 (§ 601-6[7]*l*), which reads as follows:

"A political party which has adopted a party name shall be entitled to the exclusive use of such name for the designation of its candidates on the official ballot, and no candidate of any other political party shall be entitled to have printed thereon as a party designation *any part of such name.* Nor shall any person be named on the official ballot as the candidate of more than one political party, or of any political party other than that whose certificate of his nomination was *first properly filed.*" (Italics supplied.)

We concur in the view that Harry J. O'Brien's designation as a "Real Democrat" infringed on the party name of the Democratic

party and on the face of the petition was an attempt by the petitioners to set their candidate up as a distinct species of Democrat, which in effect was an attempt to create a new party, taking over the party name of the old party and embellishing it with a qualification that attempted to distinguish its principles from those of the Democratic party as now constituted.

■ Harry O'Brien recognized the fault in the certificate of nomination and endeavored in his answer to abandon the "Real" in the name under which he was designated. The nominated candidate has not that power. The petitioning voters make the nomination and designate the party name. The named candidate could no more change that designation from "Real Democrat" to "Democrat" than he could change it to "Republican" if that party's circumstances permitted a nomination by petition.

■ Harry O'Brien contends that even if his certificate of nomination violates Minn. St. 1941, § 205.72, it should be accepted and his name should go on the ticket without party designation. With that contention we cannot agree. The ban of § 202.19 against candidates at the primary was lifted by § 202.24 only so far as to permit persons who had been candidates for the party nomination at the abortive primary to be nominated by the delinquent party by petition. Such persons cannot be nominated without the party designation of the party that failed to poll the requisite vote, nor without party designation.

The numerous cases arising out of the recent primary, involving questions of construction of the election law, indicate the necessity for its clarification. That is a problem for the legislature.

Let a peremptory writ of *mandamus* issue commanding the county auditors in the sixth congressional district to desist from causing the name of Harry J. O'Brien to be printed on the india tint official ballot as a candidate for the office of representative in congress from the sixth congressional district to be voted on at the general election on November 3, 1942; and commanding the secretary of state of Minnesota to desist from submitting the name of Harry J. O'Brien as a candidate for the office of repre-

sentative in congress from the sixth congressional district in Minnesota to the absentee voters now in the Armed Forces of the United States, to be voted on at the general election on November 3, 1942.

So ordered.

JULIUS J. OLSON, JUSTICE (concurring).

I concur in the result for the reason that the last sentence of § 205.72 (§ 601-6[7]*l*) provides: "Nor shall any person be named on the official ballot as the candidate of \* \* \* any political party other than that whose certificate of his nomination was *first properly filed.*" (Italics supplied.) Since petitioner's nominating petition was first in point of time, the quoted language compels the conclusion that respondent could not file as a Democrat, whether "Real" or otherwise. To my notion, the name "Real Democrat" was not an attempt to create "a distinct species of Democrat," nor can I conceive that its "effect was an attempt to create a new party." The existence of any such notion as is expressed under that part of the majority opinion's discussion is shocking to me, as I believe it will be to every Democrat *here* and *elsewhere.* No matter what one's shade of opinion may be, if he is a Democrat at all he is a *real* one.

PIRSIG, JUSTICE (dissenting).

I cannot agree that the certificate of nomination of the respondent had the effect of creating a new political party. This places an interpretation on the designation thereon of "Real Democrat" which is not in accord with the facts or the realities of the case. The respondent had been a candidate in the primary for nomination on the Democratic ticket. There is no reason for believing that he abandoned this party when he filed the certificate of nomination as a "Real Democrat" or that he intended thereby to become the nominee of a new political party by that name. The reasonable construction of the designation is that the respondent and his signers attempted to emphasize his allegiance to the Democratic party and its principles and that he was a *genuine* or *honest* Democrat. Under the view adopted in the majority opin-

ion, these people now find that the words they used to express that idea have been given the exactly opposite effect. Of course the word "Real" had no place on the certificate and should not be permitted to appear on the ballots, but the remedy is to strike it, not to give it an effect which defeats the purpose for which the certificate was filed.

Section 205.72 (§ 601-6[7]*l*) has no application. The provision that no person shall "be named on the official ballot as the candidate * * * of any political party other than that whose certificate of his nomination was first properly filed," when read in the light of the purpose and full context of the section, means only that when a person has improperly filed certificates as a candidate for the same office in more than one political party, the certificate first properly filed shall control and that he shall be a candidate only of the political party named therein.

PETERSON, JUSTICE (dissenting).
I concur in the dissent of Mr. Justice Pirsig.

