CLIFFORD E. ENGER v. MIKE HOLM.[1]

October 23, 1942.

Nos. 33,421, 33,422.

[1]Reported in 6 N. W. (2d) 101.

*Clifford E. Enger, pro se.*

*J. A. A. Burnquist,* Attorney General, for respondent.

PETERSON, JUSTICE.

Two proceedings in *mandamus*. One is to compel the secretary of state to accept relator's nomination by petition to fill by election not in regular course but under the provisions of Minn. Const. art. 6, § 10, for the filling of vacancies in judicial office, the vacancy in the office of associate justice of this court created by the death of the late Mr. Justice Royal A. Stone. The other is to compel the same official to accept relator's nomination by petition not to fill the vacancy in the office mentioned under the constitutional provision for the filling of vacancies in judicial office, but to fill a vacancy in a nomination for that office under Minn. St. 1941, § 202.19 (Mason St. 1940 Supp. § 601-3[3]), and not to place the name of O. J. Anderson on the ballot as a nominee.

Mr. Justice Andrew Holt and Mr. Justice Stone were elected associate justices of this court at the general election in 1936 for the six-year term from the first Monday in January 1937 to the first Monday in January 1943. After long and distinguished service on the court, Mr. Justice Holt resigned on October 6, 1942, and did not seek reëlection. Mr. Justice Stone, after many years of similar service, became a candidate for reëlection at the election to be held on November 3, 1942. At the primary held on September 8, 1942, there were ten candidates for nominations. Honorable Luther W. Youngdahl, Honorable Thomas F. Gallagher, Mr. Justice Stone, and Honorable J. Norman Peterson received the highest number of votes in the order named. Honorable O. J. Anderson

received the fifth and relator the seventh highest number of votes cast.

On September 13, 1942, five days subsequent to the primary, Mr. Justice Stone died.

The state canvassing board, which met on September 18, 1942, declared Youngdahl, Gallagher, Peterson, and Anderson to be the nominees for the office. The secretary of state intends to place their names as the nominees on the official ballot.

The governor filled the vacancies caused by Mr. Justice Holt's resignation and Mr. Justice Stone's death by appointing Mr. Thomas O. Streissguth to fill the one caused by Mr. Justice Holt's resignation and Mr. Maynard E. Pirsig to fill the one caused by Mr. Justice Stone's death.

---

MANDAMUS TO FILL BY ELECTION NOT IN REGULAR COURSE, BUT UNDER CONST. ART. 6, § 10, THE VACANCY IN THE OFFICE OF ASSOCIATE JUSTICE CREATED BY THE DEATH OF MR. JUSTICE STONE.

Relator's contention is that the vacancy in the office of associate justice of the supreme court created by Mr. Justice Stone's death is required to be filled not in the ordinary course of electing judges but by election to fill the particular vacancy under Minn. Const. art. 6, § 10, which reads:

"In case the office of any judge shall become vacant before the expiration of the regular term for which he was elected, the vacancy shall be filled by appointment by the governor, until a successor is elected and qualified. And such successor shall be elected at the first annual election that occurs more than thirty days after the vacancy shall have happened."

This, he contends, is mandatory.

A successor to Mr. Justice Stone would be elected at the forthcoming election in the regular course of things. If he had lived and would have been elected, he would have been his own successor. If the relator's contention that the election of a successor

can be held only under the provisions relating to filling vacancies is correct, the election of a successor in the regular course of things is not only prevented, but the election machinery which has been set in motion for that purpose is arrested.

The constitution provides for a judiciary selected as therein provided. Subsidiary thereto is the purpose of keeping judicial offices filled at all times. Accomplishment of the principal purpose—that of providing a judiciary—is provided for by the election of judges in the regular course for the terms fixed by the constitution. Accomplishment of the subsidiary purpose of keeping such offices filled, lest such purpose be defeated and inconvenience result from vacancies, is provided for by the provisions for filling vacancies.

Art. 6, § 3, of the constitution provides for the election of members of this court for a term of six years. Prior to the amendment of 1883 the term was seven years. State ex rel. Lull v. Frizzell, 31 Minn. 460, 18 N. W. 316. The provisions of that article for the election of a successor in case of vacancy at the first annual election that occurs not more than 30 days after the vacancy shall have occurred should be construed as subordinate to the sections providing for, and to be applicable only where vacancies in the judicial office cannot be filled by, the election of judges in regular course.

In State ex rel. Babcock v. Black, 22 Minn. 336, the precise question involved here was determined, as we believe in accordance with reason and common sense, against relator's contention. There the office of judge of probate was to be filled in regular course at the 1875 election. Within 30 days prior to the election the incumbent resigned. Relator was elected. Respondent, as county auditor, refused to issue a certificate of election upon the ground that no election of a judge of probate could be or properly was held at the general election in 1875 for the reason that art. 6, § 10, provides that vacancies shall be filled by appointment by the governor. In overruling the contention we said (22 Minn. 338):

"Section 10 was put in the constitution to provide for the exceptional case of a vacancy—for a case where the regular order of terms, and of elections for such terms, is broken in upon by a vacancy before the end of a regular term for which the judge was elected, and by the necessity to elect before the election would come on under the general rule. The election mentioned by the section is not one which comes in the regular course of such elections, as provided for by § 7 [this section relates to the office of probate judge and his term of office], but an election which becomes necessary by the happening of the vacancy; and in order that such an election, thus coming on at a time different from that at which a judge would, in the regular and natural course of things, be elected, shall not be had without adequate notice to the people, it is provided that a successor shall be elected at the first annual election that occurs more than thirty days after the vacancy shall have happened. This means the successor whose election is made necessary by the vacancy." (Parenthetical matter supplied.)

Here, a successor to fill the vacancy in question will be elected at the November election for the full constitutional term of six years. Whether a successor be elected in regular course or to fill a vacancy under § 10, the election is for the constitutional term. In Crowell v. Lambert, 9 Minn. 267, 269 (283), we said: "We look in vain for any *direct* authority in the constitution for electing any judge for a shorter period." Mr. Chief Justice Emmett and Mr. Justice Flandrau, who were then members of the court, had been members of the constitutional convention and had been active in the framing of the article on the judiciary. The opinion refers to the constitutional debates and clearly shows that the convention attached the meaning to the constitution which the court adopted in its decision.

In 1883 the constitution was amended. Art. 6, § 3, was amended so as to make the terms of members of this court six instead of seven years. Art. 7 was amended, among other things, by adding § 9, which provides, among other things, for biennial instead of annual elections on the first Tuesday after the first Monday in

November and that the official year of the state shall begin on and all terms of office shall terminate on the first Monday in January. The necessary effect of such provision is that the elec-tions in November are for terms beginning on the first Monday in the following January. See State ex rel. Lull v. Frizzell, 31 Minn. 460, 18 N. W. 316, *supra*. Since the amendment the word "annual" in the constitution is therefore to be taken as "biennial" in referring to elections. State ex rel. Smallwood v. Windom, 131 Minn. 401, 155 N. W. 629.

We said in Flakne v. Erickson, 213 Minn. 146, 6 N. W. (2d) 40:

"So, we think it is clear that if and when the governor makes an interim appointment to fill the mentioned vacancy the appointee would hold the office until a successor is elected and has qualified, and that the one elected at the next general election cannot qualify except for the regular term beginning in January 1943."

It follows as a matter of course that the successor to Mr. Justice Stone is to be elected at the forthcoming election in November in the regular course. Under art. 7, § 9, the successor cannot qualify and take office until the first Monday in January 1943. The va-cancy is filled by the appointment of Mr. Justice Maynard E. Pirsig, who is entitled to occupy the office until the first Monday in January 1943, the date on which the terms of the judges elected in November shall begin. Likewise, Mr. Justice Streissguth is en-titled to fill the vacancy caused by Mr. Justice Holt's resignation until the same time.

---

MANDAMUS TO COMPEL RESPONDENT TO ACCEPT RE-LATOR'S FILING BY PETITION NOT TO FILL THE VA-CANCY IN THE OFFICE OF ASSOCIATE JUSTICE UNDER CONST. ART. 6, § 10, BUT UNDER STATUTES TO FILL A VACANCY IN THE NOMINATION FOR THAT OFFICE IN THE ELECTION TO BE HELD IN DUE COURSE, AND NOT TO PLACE THE NAME OF O. J. ANDERSON ON THE BALLOT AS A NOMINEE.

Relator contends that he is entitled to have his name go on the ballot to fill the vacancy in the nomination of Mr. Justice Stone upon the ground that such vacancy should be filled only by nomination by petition, as he has attempted, and to prevent the name of O. J. Anderson from being placed thereon upon the ground that there is no authority in law for holding that Anderson is a nominee.

Relator bases his right to file on that part of Minn. St. 1941, § 202.23 (Mason St. 1940 Supp. § 601-3[3]d), which provides that in case of vacancy in a nomination, "if there is no other candidate for such office and a vacancy exists by reason of this fact the vacancy may be filled by the proper officer, placing upon the ballot the name or names of such candidates as are nominated by petition in the manner provided in sections 202.19 to 202.22," and on the provisions of § 202.19 (§ 601-3[3]), which permits nomination by petition after a primary, subject to two provisos, which read:

"provided that no persons shall be nominated by petition pursuant to this section for any office now or hereafter declared to be a nonpartisan office, except in case of vacancy or death or withdrawal of a nominated candidate. A person who has been a candidate for an office at the primary election in any year shall not be eligible for nomination for the same office in that year by petition or certificate under the provisions of this section."

The office of associate justice of this court is nonpartisan under *Id.* § 202.02 (§ 601-3[1]a).

The state canvassing board declared O. J. Anderson to be nominated, and respondent intends to place his name on the ballot as a nominee under authority of § 202.23 (§ 601-3[3]d), which provides that where a vacancy occurs in a nomination it shall be filled in the manner therein provided by the proper committee of the political party whose voters made the original nomination, and:

"If there is no proper committee to fill such vacancy, as above provided, then in that event the person receiving the next highest number of votes for such office at such primary election shall be

the candidate for such office and if there is no other candidate for such office and a vacancy exists by reason of this fact the vacancy may be filled by the proper officer, placing upon the ballot the name or names of such candidates as are nominated by petition in the manner provided in sections 202.19 to 202.22. Every registered voter of such political party who has qualified and participated in the primary election is eligible to sign a petition choosing a nominee to fill the vacancy."

It appears without dispute that relator was a defeated candidate at the primary; that there was a death of a nominated candidate, creating a vacancy in a nomination, and that there is no committee, much less a "proper" one, to fill the vacancy in the nomination.

While the proviso of § 202.19 (§ 601-3[3]) permits the nomination of candidates by petition for a non-partisan office, including that of a judge of this court, in cases of vacancy or death or withdrawal of a nominated candidate, the last sentence thereof as a further proviso declares a candidate defeated at the primary to be ineligible for nomination by petition for the same office at the general election. O'Brien v. O'Brien, 213 Minn. 140, 6 N. W. (2d) 47. Nor is he entitled to nomination by petition under § 202.23 (§ 601-3[3]d), because under that section nominations by petition are permitted only in the manner provided in §§ 202.19 to 202.22 (§§ 601-3[3] to 601-3[3]c). Sections 202.20-202.22 relate to the contents and to the form of nominating certificates, the eligibility of electors to sign them, and the oaths of signers, and do not authorize filing by petition in any case not permitted under § 202.19. Since § 202.19 is, therefore, controlling with respect to relator's right to file by petition, it is plain that relator is barred from becoming a candidate by petition.

It is not clear just what interest relator claims or has, if he is not entitled to the nomination on other grounds, in the question of the legality of Anderson's nomination and placing his name as a nominee on the ballot. Apparently he raises this question as a citizen and elector as well as a candidate. For that reason (see 29 C. J. S., Elections, § 140), we shall decide the question.

162

There is much to be said in support of relator's position that § 202.23 (§ 601-3[3]d) applies only to partisan, and not to nonpartisan, offices, with the consequence that there is no authority for taking Mr. Anderson as a candidate. On the affirmative side is the fact that the first sentence deals exclusively with filling vacancies in nominations by the proper political party committee and that the last sentence authorizes any voter "of *such political party*" to sign a petition to fill such a vacancy. On the negative side is the fact that the second sentence, when considered alone, by its terms clearly authorizes the action of the state canvassing board and the respondent by declaring that in case of vacancy the candidate for nomination receiving the next highest number of votes shall be the nominee, in which case a filing by petition under that section is unauthorized. In support of the negative it may be said also that the last sentence authorizing voters of "such political party" to sign a petition to fill a vacancy in a nomination recognizes the privilege of voters of a political party to select its candidates and accords to them as an incident of making nominations the filling of vacancies therein, which would otherwise be denied them by § 202.21 (§ 601-3[3]b), which provides that "no person who has voted at a primary shall be eligible as a petitioner for any nomination to an office for which nominees were voted upon at such primary."

It is therefore clear from the arguments *pro* and *con,* which have just been stated, and from the litigation that has come before this court pending the forthcoming election, that the statutes relating to nomination by petition and filling vacancies in nominations are full of ambiguities and that their meaning can be ascertained only by construction. Furthermore, there is no certainty that any particular construction is the only one of which these statutes are susceptible, much less that it is the correct one.

The problem of the construction of § 202.23 (§ 601-3[3]d) for many years has confronted the executive and administrative officers of the state, including the attorney general, its chief law officer. The uniform, long-continued construction of the statute in ques-

tion, extending over 30 years according to the official records, has been that the statute is applicable to non-partisan as well as to partisan offices, and that where a vacancy occurs in a nomination for a non-partisan office, the person receiving the next highest number of votes for such office shall be the candidate for such office.[2]

It is not necessary to decide whether the executive and administrative construction is correct. It is enough to say that such construction finds reasonable support and justification in the language of the statute and the processes by which the construction was made.

In 1937 an interim legislative committee was appointed to study our election laws and their application for the purpose, among others, of determining what changes should be made therein. A subcommittee was appointed "to obtain information from the various election officials of the state * * * as to necessary changes in the existing election laws for the purpose of clarification and revision * * *." Report of the Interim Committee on Election Laws to the Legislature of the State of Minnesota, 1939, p. iv. The committee and the subcommittee held numerous hearings. As a result of its labors the committee reported a bill which embodied the substance of L. 1939, c. 345, which with some exceptions codified and arranged all prior election laws. It is a reasonable inference that the legislature, when it enacted c. 345, not only because of the report of the interim committee, but also because of its presumed knowledge of such matters, was thoroughly conversant with the prior executive and administrative construction and practical operation of the statutes in question.

The prior law, Mason St. 1927, c. 6, § 344, was repealed by c. 345, Part Twelve, § 1, and then was reënacted without change as c. 345,

[2]Selected Opinions of Attorney General Relating to Elections, Compiled by G. A. Youngquist, Attorney General (1928) No. 149, September 25, 1912, and No. 150, September 27, 1922; Opinions of Attorney General 1934, No. 387; Id. No. 141-d2, August 10, 1938; see notes, Mason St. 1940 Supp. § 344.

Part Three, c. 3, § 5. C. 345, Part Twelve, § 2, provides that such a reënactment should be construed as a continuation of the old law and not as a new enactment. Johnson v. DuBois, 208 Minn. 557, 561, 294 N. W. 839.

Absent legislative manifestation of contrary intention, the reënactment of a statute without change after it has received a practical construction by the executive or administrative departments of the government for a long period of time adopts the prior construction. Christgau v. Woodlawn Cemetery Assn. 208 Minn. 263, 273, 293 N. W. 619; Bemis Bro. Bag Co. v. Wallace, 197 Minn. 216, 266 N. W. 690; Bowen v. Johnston, 306 U. S. 19, 59 S. Ct. 442, 83 L. ed. 455. There are, of course, exceptions to the rule, as where an administrative agency by statute has continuing power after as well as before reënactment to construe a statute which it administers and thus has legislative authority after reënactment to adopt a construction contrary to the prior one, or where a different construction of the reënacted statute is prescribed by the reënacting act. Helvering v. Reynolds, 313 U. S. 428, 61 S. Ct. 971, 85 L. ed. 1438, 134 A. L. R. 1155; 59 C. J., Statutes, p. 610, § 625, notes 38 and 39. Some courts hold that the prior construction will not be deemed to have been adopted in cases where it is plainly erroneous. United States v. Missouri Pac. R. Co. 278 U. S. 269, 49 S. Ct. 133, 73 L. ed. 322. In this class of cases, as in all others, the legislative intent controls, and the question is what was that intent? The rules mentioned are but aids in the quest for the answer to that question. In the instant case the general rule that the reënactment adopted the prior construction applies not only because that is the presumed legislative intention, but also because all tokens of intention support that view. Since it was the purpose of the legislature to clarify and change existing election laws if any were found to be unsatisfactory in operation, and the legislature had information concerning the prior executive and administrative construction and operation of the statute in question, it is reasonable to infer that no change was made therein because the legislature was satisfied with such

construction and intended that it should continue in the future. Thereby the prior construction was adopted. No evidence of a contrary intention appears. Cases holding that an intention to adopt a prior construction will not be inferred where such construction is plainly erroneous have no application here, if not for other reasons because, as has been stated, the prior construction has a reasonable basis. Therefore the inference is inescapable that by reënactment of the old statute the prior construction thereof was adopted.

In each case the petition for a peremptory writ of *mandamus* is denied.

MR. JUSTICE PIRSIG and MR. JUSTICE STREISSGUTH took no part in the consideration or decision of this case.

